ANGLO–AMERICAN PROVISION CO. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. May 8, 1902.)

No. 834.

1. CUSTOMS DUTIES—DRAWBACKS — IMPORTED MATERIALS USED IN EXPORTED MANUFACTURES OR PRODUCTS.

Section 30 of the tariff act of 1897 provides that "where imported materials on which duties have been paid are used in the manufacture of articles manufactured or produced in the United States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties: Provided that when the articles exported are made in part from domestic materials the imported materials, or the parts of the articles made from such materials, shall so appear in the completed articles that the quantity or measure thereof may be ascertained." *Held*, that such provision does not entitle an exporter of hams and bacon produced and packed in the United States to a drawback of duties paid on imported borax, which is applied to the cut surfaces of the meat, when it is intended for export only as a preservative during shipment, and which is afterward washed out so far as possible. The borax in such case is no part of the manufacture or product, nor, if conceded to be such, does it "so appear in the completed articles that the quantity or measure thereof may be ascertained."

2. SAME.

Nor can the drawback be allowed in such case on the theory that the borax exported is itself a manufacture because it was imported in lumps, and ground or powdered before being applied to the meat; since it is not exported in the form of powdered borax, but is absorbed into the surface of the meat.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

James C. McShane, for plaintiff in error.

S. H. Bethea, U. S. Atty., Oliver E. Pagin, Asst. U. S. Atty., Rudolph Matz, and Walter L. Fisher, for the United States.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. Plaintiff in error failed in its action to recover from the government a drawback of customs duties paid on imported borax used in packing hog products for export.

Under the revenue act of 1897, now in force, a duty of five cents a pound is levied on imported borax. Section 30 of the act provides:

"That where imported materials on which duties have been paid are used in the manufacture of articles manufactured or produced in the United

States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties: Provided, that when the articles exported are made in part from domestic materials the imported materials, or the parts of the articles made from such materials, shall so appear in the completed articles that the quantity or measure thereof may be ascertained: And provided further, that the drawback on any article allowed under existing law shall be continued at the rate herein provided. That the imported materials used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such materials is claimed, be identified, the quantity of such materials used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, to the agent of either or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, under such regulations as the secretary of the treasury shall prescribe."

The court made a special finding of facts, which plaintiff in error challenges in some respects, but which is fully sustained by the evidence. The finding is substantially as follows: Plaintiff in error is a corporation engaged at Chicago in the pork-packing industry, employs 1,400 to 1,700 men, has over $3,000,000 invested in the business, slaughters and exports over 700,000 hogs annually, maintains extensive slaughter and packing houses, and in connection therewith operates car shops, cooper shops, etc. In killing, cleaning, dressing, and cutting up the hogs, a considerable part of the work is done by machinery, and the rest is divided among many skilled workmen, each of whom performs a separate part. The cuts are then cured, either in a pickling solution, which consists mainly of salt, or by being sprinkled with dry salt and allowed to remain thus from 10 to 40 days. The meats are fully cured and made ready for consumption without the use of borax. The meats intended for foreign markets are then taken to the packing room and rolled in a trough containing refined crystal borax in powdered form. The borax is brushed from the skin surface, leaving on the cut surfaces only so much as naturally adheres. The meats are then placed in boxes and pressed down by machinery. The boxes are nailed and strapped and put on railroad cars for shipment. Part of the borax, by capillary attraction, enters mechanically into the outer layer of the meat, except on the skin side. The extent to which it penetrates depends upon the condition of the meat, the amount that sticks to the cut surfaces, the season of the year, temperature and humidity, and the time consumed in shipment. Expert chemists estimated the penetration to be from one-eighth to one-fourth of an inch. When meats thus shipped in borax are received abroad, they are washed in warm water. This is for the purpose of removing all the borax possible, which becomes waste. If the borax has penetrated beyond the usual extent, the meats are said to be borax eaten, and their value is proportionately diminished. If the meats were intended for sale here no borax would be applied. The sole purpose of using the borax is to preserve the meats while in transit. Refrigeration, if practicable, would serve the same end. The quantity of borax in and upon any piece of meat can be determined by chemical analysis. The

amount used in packing meats for shipment as described can be as-'
certained by books of account or other similar data.   In September,
1899, plaintiff in error imported large quantities of refined crystal
borax, which came in lumps from a quarter of an inch to six inches
in diameter.   The lumps were pulverized in a machine, somewhat like
a large coffee mill, operated by one employé.   Prior to September,
1899, plaintiff in error used borax produced and refined in the United
States.   This was purchased sometimes in lump, sometimes in pow-
dered form.   When purchased in lump it was powdered in the ma-
chine above referred to.   The treasury department, by a uniform
course of decisions commencing in February, 1895, has held that a
drawback will not be allowed on imported borax used on exported
meats in the manner hereinabove described.   Plaintiff in error, be-
fore using the borax imported by it, notified the collector of customs
at Chicago of its intention to use imported borax, and offered to
comply with any and all rules which the department might prescribe.
The collector refused to give instructions on the ground that plain-
tiff in error was not entitled to any drawback.

For two reasons it is needless to pass a definitive judgment upon the
contentions of plaintiff in error that ham and bacon are manufactures,
and that, if they are not, section 30 of the revenue law is not lim-
ited to manufactures, but extends generally to all products.   First.
The articles manufactured or produced by plaintiff in error are ham
and bacon.   No borax is used in slaughtering, dressing, or curing.
If the meats are intended for sale in this country, borax is not ap-
plied to them at all.   If destined abroad, borax is used solely to pre-
serve them during transportation.   To the extent that the borax
cannot be washed off, the "articles manufactured or produced in the
United States" are injured, against the interest and design of the
manufacturer or producer.   This, therefore, is not a case "where im-
ported materials on which duties have been paid are used in the man-
ufacture of articles manufactured or produced in the United States."
Second. If the premise were granted that borax is used in the manu-
facture or production of hams and bacon a drawback would not be
authorized, because the borax does not "so appear in the completed
articles that the quantity or measure thereof may be ascertained."
The findings show that the amount of borax that adheres to and en-
ters into the outer layer of one ham does not determine the amount
that is used upon another.   The amount in each case might be as-
certained by destroying the ham; but it is not possible, as it is in the
case of a shipment of soap, made from one formula, by analyzing one
piece, to fix a standard from an examination of the "completed ar-
ticles."   The amount used by plaintiff in error in packing meats for
export could be ascertained by books of account, but this section
of the revenue law does not contemplate that the government shall
have a bookkeeper and inspector in every exporter's establishment.
On the contrary, the intent is that the completed article shall in and
of itself furnish the standard for measuring the amount of imported
materials used in the manufacture thereof.

Plaintiff in error also presents the case from the point of view that
it imports lump borax, from which it manufactures and exports pow-

dered borax, and is therefore entitled to the drawback. If it were permissible to magnify into a manufacturing business the powdering of refined lump borax in the manner and for the purpose disclosed by this record, nevertheless the drawback would not be allowable, because powdered borax is not an article which plaintiff in error exports. The powdered borax unites, with the outer layer of the cut surfaces of the meat, to form a protecting cover from one-eighth to one-fourth of an inch in thickness. If anything aside from the meat proper is exported, it is this protecting cover; and in it the amount of imported material does not "so appear in the completed articles that the quantity or measure thereof may be ascertained."

The judgment is affirmed.