In re J. F. GRANDY & SON.

Ex parte GRANDY.

(District Court, D. South Carolina. July 6, 1906.)

BANKRUPTCY—EQUITABLE LIEN—AGREEMENT TO ASSIGN LIFE INSURANCE POLICIES.

> A husband, at a time when he was solvent, made a parol agreement to assign to his wife certain life insurance policies then held by him in consideration of her relinquishment of her dower interest in their residence, which he desired to transfer as security for a loan, and she made such relinquishment. The cash value of the policies was about the same as the value of her dower interest in the property, and the agreement was made in good faith, but through neglect the husband did not formally assign the policies until after he became insolvent, and within four months prior to his bankruptcy. Held, that the agreement gave the wife an equitable lien on the policies, and that the assignment should be upheld as against the husband's trustee in bankruptcy.

In Bankruptcy.

Cothran, Dean & Cothran, for the bankrupt.

E. M. Blythe, for the trustee.

BRAWLEY, District Judge. Messrs. J. F. Grandy & Son were contractors of high standing and good credit. In the summer of 1905 they were engaged upon a contract with the Federal Construction Company, from which large profits were expected, and which required them to raise considerable money, but in the autumn and early winter of 1905, owing to unlooked for contingencies, the particulars of which need not be here related, disasters overtook them, and, instead of realizing profits in their undertaking, they suffered such losses that by advice of counsel they filed their petition December 18, 1905, in voluntary bankruptcy, and on January 31, 1906, they were discharged. Certain legal questions arising out of the bankruptcy have been before me, and by universal testimony the conduct of both father and son has been upright and honorable throughout, and their failure is attributed to unmerited disasters, and not to any misconduct on their part. On August 10, 1905, J. F. Grandy borrowed from the City National Bank of Greenville $5,000, and to secure this money he had to sell his home, and he conveyed the same by deed to the bank, with the condition that the bank would reconvey the premises when he repaid the money. He had at that time two policies of life insurance, and in order to raise the money the bank required from his wife a renunciation of her dower. It was arranged between Grandy and his wife that she would renounce her dower if these policies were assigned to her, and he agreed to do so. No question is made as to the good faith of this transaction, and that the assignment of these policies was the condition and inducement for the renunciation of dower, and the testimony is that from time to time the wife requested the assignment to be made, but, being very busy, and in the hope, probably, of being able to secure a reconveyance of his home by a repayment of the loan, and it being necessary that the formal assignment should be made upon blanks furnished by the insurance companies, he postponed the actual assign-

ment until December, when he wrote for the blanks, and executed them on December 16th, filing his petition in bankruptcy a few days thereafter. There is no doubt that at the date of the actual formal assignment Grandy was insolvent, and that at the date when the agreement was made with Mrs. Grandy he was not insolvent. Mrs. Grandy's testimony is that, when her husband wanted her to sign the papers for the sale of their home, she told him that she ought to have the place or his life insurance, and that she had an agreement with him for the assignment of these policies. It appears that Grandy's residence was worth about $6,000. Under the law of this state the widow's dower is one-third for life, and by general custom one-sixth of the cash value is generally accepted as a commutation of dower. The testimony shows that the present cash value of the insurance policies is about $1,000. The trustee's contention is that, inasmuch as the actual transfer of the policies was made a few days prior to the filing of the petition in bankruptcy, when Grandy was insolvent, it is void as a preference under the bankrupt act, and that the policies belong to him as trustee of the bankrupt estate. I had occasion to examine a case of like character in Wilder v. Watts (C. C.) 138 Fed. 426, where many of the cases cited by the trustee were considered. In that case Watts borrowed $1,000 from the National Bank of Newberry for the purchase of a stock of merchandise in August, 1904, and agreed that he would have the merchandise insured, and assign the policy of insurance as collateral to secure the money advanced. The money loaned by the bank was invested in merchandise, as agreed, and the policy of insurance thereon was taken out in Watts' name, and deposited for safe-keeping, it appears, with Bailey & Son. A fire occurred in December, as the result of which Watts became insolvent. After the fire he assigned the policy to the bank, in accordance with the agreement made at the time the money was borrowed. Other creditors thereupon filed a petition in involuntary bankruptcy against Watts, alleging as the act of bankruptcy the transfer of the policy, and that it was a preference under the bankrupt act. The referee held that this transfer was a preference, and constituted an act of bankruptcy, but upon a review of his decision I was of opinion that under the agreement between the bank and Watts, made at the time when Watts was not insolvent, the bank had an equitable lien upon the insurance policy, it having advanced the money for the purchase of the goods on a contract that the goods were to be insured as security for the loan, and that the manual transfer and delivery thereof after the fire was not a preference under the bankrupt act. The case most nearly in point, and which seemed to me to sustain the conclusion I then reached, not, however, without some misgiving, was McDonald v. Daskam, 116 Fed. 279, 53 C. C. A. 554, affirming the decree of Judge Seaman, in Re Wittenberg Veneer & Panel Co. (D. C.) 108 Fed. 595. That was a case of an agreement to assign certain policies of fire insurance as collateral for a loan. The policies were in the possession of the insurance agent, and were not delivered until after the fire and bankruptcy. The court held that the claimant was entitled to an equitable lien, and the actual delivery of the policies and continuous possession by the

transferee was not indispensable to create and preserve such lien; that an agreement of this nature should not be considered as a common-law pledge, and void, because the policies were not given into the possession of Bascom or the bank; that under the modern rule an equitable interest may be created by parol as well as by deed; that all depends on the intention of the parties, and, if they intended it to be an assignment of the fund, equity will so treat it. There was no appeal in Wilder v. Watts, and if the decision there was correct it seems to be conclusive of the case now under consideration; but I am asked by the trustee to reconsider that case in the light of certain cases which he has brought to my attention.

The first is Mathews v. Hardt, 9 Am. Bankr. Rep. 373, 80 N. Y. Supp. 462, decided by the Appellate Division, First Department, Supreme Court of New York. In that case one Smith had, prior to September, 1899, been in business, and had failed, and made an assignment for the benefit of creditors, among whom were Hardt & Co. A compromise was effected and a corporation designated "The Smith Company" was formed; Hardt & Co. owning a majority of the stock. Smith was made president of the company, which, having no working capital, made an agreement with Hardt & Co. to advance moneys to the corporation; Hardt & Co. to have a lien upon all of the assets of every kind then owned or which might thereafter be acquired. Hardt & Co. made the advances, and the business was carried on until October, 1900, when they refused to advance any more. Smith resigned as president of the corporation, and abandoned the business, and Hardt & Co. took possession of practically all of the assets of the corporation. The corporation at that time was clearly insolvent, and shortly thereafter creditors filed their petition in involuntary bankruptcy, and the trustee brought its suit against Hardt & Co., and the court held that the trustee could recover the property taken by Hardt & Co. or its value. It is obvious that there is no similarity in the facts of that case to those in the case now under consideration. Hardt & Co. were entirely familiar with the affairs of the reorganized corporation, and with its financial difficulties from its inception. They were themselves large stockholders in the company, and the verbal agreement that they claim was a secret agreement, which did not prevent the company from obtaining credit from others in the conduct of its business, and the court very properly held that the transfer of all the assets after the company became insolvent was a voidable preference.

The next case cited is In re Sheridan (D. C.) 98 Fed. 406. The facts are not given in the opinion, which is very short; citing Ex parte Potts, Fed. Cas. No. 11,344, where it appeared that the alleged bankrupts when they were admittedly solvent had assigned to a creditor as collateral security for advances several policies of insurance and bills of lading upon vessel and cargo then at sea. Under such circumstances it was correctly held that the transfer was not in fraud of creditors. The court then goes on to say that in that case "no question of preference arose, whereas here the question is one of preference simply. The goods here were never actually pledged until the exceptant for the first time took them into his possession a few days before the petition was

filed. Before that time there was a mere agreement to pledge. The goods were never delivered to the exceptant, nor (assuming for present purposes that this would have been good against the other creditors) were they even set apart and continuously treated as his property. Under the facts proved, the pledge was not completed until the date of removal. This being so, the exceptant's title attached upon that date, and the transfer created a preference in violation of the act."

' The next is In re Hunt (D. C.) 139 Fed. 283. In that case Hunt gave a mortgage on his real estate to the Delaware National Bank, reciting an indebtedness to the bank of $5,000, and it was given as security for the payment of all liability or liabilities of Hunt due or to become due or that may be hereafter contracted. This mortgage was executed June 4, 1903, but not recorded until June 10, 1904. Hunt was adjudicated a bankrupt June 17, 1904. Although it appeared in that case that Honeywill, the president of the bank, had failed to disclose that the bank held the mortgage, when inquiry was made as to the standing and financial responsibility of Hunt, and that Hunt had made incorrect and untruthful statements regarding his indebtedness to some of his numerous creditors, the court held that the bank was not estopped from asserting its mortgage. Surely there is nothing in the facts of that case which have any relevancy to this.

The next case cited is In re Dismal Swamp Co. (D. C.) 135 Fed. 415. In that case certain parties, none of whom had any funds, had formed a partnership under the name of the Dismal Swamp Contracting Company, and borrowed from the uncle of one of the partners in June, 1903, the sum of $8,700, and agreed to secure the indebtedness by a mortgage. They invested the money in a stock of merchandise and in a logging business. Nothing was done to consummate this agreement until December, when the deed was executed and recorded. Within less than four months the company became bankrupt. The trustee claimed that the deed was void under the Virginia decisions, in that it covered a stock of merchandise, and reserved to the grantors possession and the power of sale; second, that it was voidable under the bankruptcy act, in that it creates a preference, and that, as it comprised the entire estate and assets of the bankrupt, it was a conveyance with intent to delay and defraud creditors. Judge Waddill, after citing Pollock v. Jones, 124 Fed. 163, 61 C. C. A. 555 (a case which was decided by myself in the District Court and affirmed by the Circuit Court of Appeals), wherein Judge Simonton, discussing the question of a parol promise to secure an indebtedness in future, uses this language: "We are of opinion that the bare promise to give security, not expressing, in terms, the character and subject-matter of the security, could not create either an equitable or legal mortgage," says:

"Under the facts of the present case, it cannot be seriously contended that the specific property upon which the security was to have been given, or, as a matter of fact, was subsequently given, was in terms enumerated or known, or could have been known. It was purchased long after the making of the loan, and at the time of the making of the same was known of in a general way only; that is to say, one of the borrowers, knowing that he and his associates were going to embark in the lumber and sawmill business, promised to secure the money borrowed upon the plant, fixtures, appurtenances, and appliances thereof, and a stock of certain mercantile goods to be used in con-

nection therewith, which they subsequently did, and not only conveyed the property purchased with the money borrowed, as aforesaid, but also other property which had not been paid for."

Under the Virginia Statute, deeds of this kind as against creditors do not constitute a lien until duly recorded; and, as the bankruptcy act expressly provides that claims which for want of record or for other reasons would not have been valid liens as against the claims of creditors of the bankrupt, shall not be liens against his estate, it was very correctly held that the mortgage could not be sustained.

In re Ronk (D. C.) 111 Fed. 154, is cited by the learned judge in support of his conclusion. In that case the bankrupt, who lived in the same house with his mother, borrowed from her $750, giving his note therefor November 14, 1900. He gave another note for $350 for moneys to be thereafter advanced. The precise date when it was to be advanced is not stated. At the time when the first loan was made the bankrupt agreed to give his mother a chattel mortgage on all the goods, wares, and merchandise in his store, and also on all his after-acquired goods. A chattel mortgage was executed, and was recorded March 29, 1901, within four months of the bankruptcy, to secure these two notes dated November 14, 1900. Judge Baker, in reviewing the order of the referee which adjudged this mortgage to be valid, refers to the statute of Indiana, which provides that no mortgage of goods shall be valid against any other person than the parties thereto, where such goods are not delivered to the mortgagee and retained by him, unless such mortgage was recorded within 10 days after the execution thereof, and says that:

"If the mortgage had been executed on November 14, 1900, and had not been recorded until March 29, 1901, manifestly it would have been invalid as against creditors. It is difficult to perceive how, in view of this statute, a secret claim or equity can be held to have been created by the verbal agreement, when the mortgage or assignment actually executed by the parties at the time, if unrecorded, would have been invalid as against creditors. It is apparent that it was the purpose of the Legislature to allow no valid claim, lien, or secret equity to be created on goods unless public disclosure was made either by the delivery of the goods to the assignee or mortgagee, and the retention thereof by him, or by recording the assignment or mortgage within ten days. To hold otherwise would be to defeat the beneficial effect of the recording statute. Section 67, cl. a, of the bankruptcy act provides: 'Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate.' Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]. It cannot be successfully maintained that the verbal agreement created a valid lien as against the claims of the creditors, and, if it did not create a valid lien, then by the terms of the bankruptcy act it cannot be enforced as a lien entitled to priority over other claims."

These are the cases chiefly relied upon by the trustee. The opinions therein refer to many other cases, all of which have been examined, and some of them are analyzed in the opinion already filed in Wilder v. Watts. In nearly all of them the lien sought to be established is upon property actually and visibly in the possession of the bankrupt—a possession which tends to give the bankrupt credit, and enables him to buy goods or obtain loans from other creditors. In some of them the alleged liens are in terms declared invalid by the recording laws of the

several states. In some the precise property claimed to be covered by the lien is incapable of identification. They are in the nature of secret liens, which are as obnoxious in equity as in law. If they were allowed, as is well observed by Judge Waddill in the case already cited, "the door for fraud would be left wide open, and creditors would never know when they were safe in dealing with the estates of their debtors"; and, as is said by Judge Baker, "it would be a standing invitation to perjury, and would defeat the declared policy and purpose of our state legislation, as well as the policy and purpose of the bankruptcy act."

I am in entire accord with the views thus expressed, and believe that all of these cases were correctly decided, but it does not seem to me that the facts upon which those decisions rest have any analogy to Grandy's Case. If Grandy had borrowed money from his wife, and agreed to give her a lien upon property of which he was in possession, and, remaining in possession and treating the property as his own, obtained credit upon the faith of his title to it, such secret lien would be abhorrent to equity, and invalid under the bankrupt act; but such is not the case here. He obtained from Mrs. Grandy her renunciation of dower for valuable consideration, upon the absolute promise that he would assign to her these policies of insurance, the cash value of which, as admitted by the testimony, was about the same as the value of her dower interest. The contract was absolute. He was not insolvent at the time, and there was no question as to the good faith of the transaction. There is no statute which requires the recording of a transfer of this character, nor was a written agreement necessary. A parol agreement, if properly proved, would be enforceable in equity. His interest in these policies was in the nature of a chose in action. There is no proof that any of the creditors knew of the existence of these policies of insurance. They were not assets or property the possession of which tended to enhance his credit. No creditor can fairly claim that he extended credit to him by reason of his supposed title to or possession of these policies, or that the failure to make the formal assignment was with a view of hindering, delaying, or defrauding creditors. Mrs. Grandy's right and title to these policies accrued at the moment when she signed her renunciation of dower, which was the consideration paid. Equity from that date would have compelled the execution of such formal papers as were necessary to enable her to obtain her own, and in such circumstances the date of the formal assignment does not seem to me material. All transactions between a wife and a husband, who afterwards proves to be in failing circumstances, ought to be subject to the closest scrutiny by the courts, and no claim by her upon his estate, unless sustained by abundant testimony, ought to be allowed; but in this case there is no question of the absolute good faith of this transaction. That she has parted with a valuable property right upon an express agreement that a specific security should be assigned to her, and the neglect of the husband to make the formal assignment—a neglect for which she is not to be blamed, and which did not work to the prejudice of the creditors—ought not to operate to defeat her title.

The trustee has brought to the attention of the court the fact that since the bankruptcy Mrs. Grandy has bought the house and lot from the bank, and that she is now the owner of the same in fee simple, and her dower rights thereby extinguished. I cannot see that this has any bearing on the question. If there is a suspicion that she bought the property with money obtained from her husband, another question might arise; but there is no such suspicion, for it appears that she has raised the money for the purchase by mortgage on the property itself.

It is therefore adjudged that Mrs. Grandy is entitled to the policies of insurance described, and the trustee is directed to turn the same over to her, with leave, however, if he is so advised, to appeal from this order.