GOETZ, Trustee, Respondent, vs. ZEIF, Appellant.

*October 17—November 13, 1923.*

*Bankruptcy: Preferences: Repayment of short-time loans: Reasonable cause to believe transfer effects preference: Evidence: Relevancy: Sufficiency: Assignments to secure loans: How made: Payments on account: Preferential or fraudulent transfers.*

1. In an action by a trustee in bankruptcy to recover a preference under the federal Bankruptcy Act (sub. *a* and *b*, sec. 60), the trustee was not required to prove that a transfer of property was intended by either party as a preference, but merely that it operated as such and that the defendant had reasonable cause to believe the transfer would effect a preference.
2. Knowledge of such facts as would lead an ordinarily prudent business man to believe that by a transfer a preference would be effected constitutes "reasonable cause" for such belief within the meaning of sub. *a*, sec. 60, of the Bankruptcy Act, making a transfer operating as a preference voidable if the transferee had "reasonable cause" to believe that it would have that effect.

Goetz v. Zeif, 181 Wis. 628.

3. In ascertaining the question of reasonable cause for belief under said sub. *a* and *b*, the relation of the parties, their intimacy or lack of it, the usual or unusual nature of the transfer, the opportunities of the creditor for knowledge, the participation of the creditor, if any, in the business of the debtor, and the fairness or unfairness of the witnesses as to the disclosure of relevant facts within their knowledge, may be properly considered.

4. A valid assignment by a corporation of trade acceptances and accounts at the time money was loaned to it and which was made as security for the loans should be upheld even though the corporation was insolvent at the time.

5. Assignment of trade acceptances, to be valid, need not be in writing but must be specific.

6. If a merchant buys goods on credit, giving no security, and subsequently pays for them while insolvent, the payment may be set aside as a preference by the trustee in bankruptcy if the creditor had reasonable cause to believe that he was being preferred, under sub. *a* and *b*, sec. 60, of the Bankruptcy Act.

7. A payment of money is a "transfer" within the meaning of sub. *a*, sec. 60, providing when transfers may effect a preference.

8. In a "preferential transfer" under said sub. *a* and *b*, sec. 60, the fraud is constructive or technical, consisting in the infraction of that rule of equal distribution among creditors which it is the policy of the law to enforce when all men cannot be fully paid, while in a "fraudulent transfer," within sub. *e*, sec. 67, the bankrupt has secured an advantage for himself out of what in law should belong to his creditors and not to him.

9. Under the Bankruptcy Act, preferences may be set aside by the trustee on the theory that equality between creditors of the same class is equity.

10. In an action by a trustee in bankruptcy to recover the amount paid by the bankrupts to the defendant on the ground that the payment constituted a preference, the evidence is *held* to sustain findings that there was no agreement by the defendant and the bankrupts constituting equitable assignments of certain accounts or trade acceptances, and that defendant had reasonable cause to believe that the payment would effect a preference.

11. Where the evidence was circumstantial and various conflicting inferences might have been drawn, the supreme court will not disturb the findings of the trial court.

APPEAL from a judgment of the circuit court for Milwaukee county: GUSTAVE ·G. GEHRZ, Circuit Judge.  *Affirmed.*

For the appellant there was a brief by *Wheeler & Witte,* attorneys, and *Clay F. Olmstead,* of counsel, all of Milwaukee, and oral argument by *Lyman G. Wheeler.*

For the respondent there was a brief by *Kaumheimer & Kenney* of Milwaukee, and oral argument by *William Kaumheimer* and *R. I. Kenney.*

JONES, J.    This is an action at law brought by the plaintiff as trustee against the defendant for the recovery of $12,822 which it is alleged defendant received contrary to the provisions of the National Bankruptcy Act.    The case was tried before the court, a jury having been waived. Judgment was rendered in favor of plaintiff in the sum of $12,623.91 with interest.    A second cause of action was alleged in the complaint and disallowed.

The complaint alleged that plaintiff was the acting trustee of the bankrupt corporation; that a petition in involuntary bankruptcy was filed July 7, 1920, and the adjudication was made July 21, 1920; that within four months prior to the time of filing the petition and while the corporation was insolvent and indebted to defendant and other creditors of the same class upon unsecured indebtedness, the corporation, knowing its insolvency, made a transfer of portions of its property to the defendant; made certain payments to the defendant amounting in the aggregate to the sum above named; that the effect of such payments made to defendant was to enable him to obtain a greater percentage of his debt than any other creditor of the same class, and that such payments operated as preferences; that the defendant received these payments knowing or having reasonable cause to believe that he was receiving a preference under

the Bankruptcy Act; that plaintiff had insufficient assets in hand to pay in full the debts of the bankrupt; that due demand had been made, and judgment was asked for the sum above named.

The answer admitted the payments and alleged that as to each of the same, at the time of such payments, he had paid to the company full value therefor; that the defendant was not enriched by any of the transactions and the company was not impoverished by any of them, and denied either knowledge or reason to believe that at the time of the transactions the corporation was insolvent.

The answer further denies that the effect of any of the transactions was to enable the defendant to obtain a greater percentage of his debt than any other creditor and denies that the bankrupt was at any time indebted to him; and alleges that the transactions were honestly and completely made as to each of them at the time they occurred.

On information and belief it was denied that the assets in the hands of the plaintiff were insufficient to pay the debts of the bankrupt in full. There was also a general denial.

The bankrupt was a corporation with its principal office and place of business in Milwaukee, and its principal stockholders were Sol, Max, and Michael Sadek, who are first cousins of the defendant. The company purchased scrap iron and waste metal from factories and foundries and by smelting and other processes reduced the same to ingot bars. Its authorized capital stock was $50,000.

The defendant resided in Ludington, Michigan; was a retired broker; and had for some years preceding the transactions in question been engaged in business transactions with the company, consisting primarily in making short loans to it, and on May 31, 1920, the company was indebted to defendant in the sum of $1,725.

The court found that the following transfers to defendant by the bankrupt constituted preferences within the purview of the Bankruptcy Act:

| | | |
|---|---:|---:|
| Check, Lamp-Miller Company......$1,441 80 | | |
| Check, Loeffelholz Company ..... 3,830 80 | | |
| | $5,272 60 | |
| Less check from J. Zeif .......... 198 69 | | |
| | | $5,073 91 |
| Check, Waukesha Foundry Co. ....$5,000 00 | | |
| Garden City Notes ............. 550 00 | | |
| Check, Loeffelholz Co. .......... 2,000 00 | | |
| | | 7,550 00 |
| | | $12,623 91 |

There were thirty findings of fact in which the transactions between the parties were quite fully stated. The trial consumed five or six days, during which time a large amount of evidence and many documents were received. The transactions as described in the evidence were very complicated, and it is not believed that it would serve any good purpose to undertake to state the evidence in detail. On the contrary, it is believed that a general summary of the evidence, stating the claims of the parties and the nature of the evidence relied on by each, would present a clearer view of the situation than an attempt to state the facts in detail.

Defendant's counsel earnestly claim that there is no positive testimony on which the court was justified in finding that the defendant had any knowledge or good reason to believe that the transfers and payments were made while the company was insolvent; that each loan made by the defendant to the company and that each payment or transfer to the defendant was a complete and separate transaction; that there is no direct evidence that defendant had any knowledge of the financial situation of the company; that according to the testimony he never examined the books,

and that if he had made such examination they were in such shape as to furnish no information; that there were many fictitious accounts in the books; that inventories had been juggled by the officers of the company in such a manner that any attempted investigation would have been futile; that the advances and loans made by the defendant, which all took place in the month of June, 1920, were not the first which had been made; that there had been similar transactions in former years and that in all cases the loans had been paid; that when each loan was made by the defendant there was an agreement that he should be secured by definite accounts which were due or to become due to the company, and that such agreements constituted equitable assignments of the accounts or trade acceptances; that when there was a substitution of one account or trade acceptance for another, and there were several such claims of substitution, the agreement therefor was distinct and separate; and that the embarrassments of the company which led to its bankruptcy were partly caused by the conduct of other creditors to whom the company had assigned accounts, which greatly increased the financial difficulty of the company; all of which was unknown to the defendant.

It is argued that the transactions between the company and the defendant caused no loss to the bankrupt estate; that the transactions were in the ordinary course of business and entirely consistent with the view that the defendant had no reason to believe that the company was insolvent; that the defendant made no profit and did not receive interest on the loans he had made; that the Sadek brothers believed themselves to be solvent at the time of these transactions and that the defendant had never made inquiries on the subject. It is urged that it is extremely improbable that he would have made the advances or loans if he had reason to believe the company was insolvent.

On the part of the trustee it is claimed that the facts in respect to the financial condition of the company were

peculiarly within the knowledge of the Sadek brothers and the defendant, and that they were all hostile witnesses; that in former transactions with the Sadek brothers the defendant knew of their want of integrity and had charged them with dishonesty in letters five or six years before, although their former controversies seem to have been reconciled in 1920. It appeared that the company before the transactions in June, 1920, had made some transfers of accounts to procure accommodations from the Locher & Scheffron Company, and that in May and June negotiations were pending between the Progressive Metal Company and that company for a consolidation; that on May 22d the defendant received a telegram as follows:

"Arrange to be here Monday morning without fail. Important matters to take up. We depend upon your being here."

On June 9th the following:

"Be here tomorrow morning. Sure to arrange all financial matters with Mr. Locher."

And on June 14th the following:

"Letter received. Arrange to take care everything. Very important that you be here in the morning. We will arrange all matters to suit you as outlined when here. Do not worry about expenses. More important matters essential."

The defendant took part in the negotiations with the Locher & Scheffron Company and it was expected that he would be a stockholder in the company after the reorganization. The defendant stated that he did not remember what took place during the negotiations, and it is claimed by respondent's counsel that his testimony was discredited by his unwillingness to disclose facts within his knowledge, and that he undoubtedly, during these negotiations, gained information concerning the financial condition of the company.

The defendant came to Milwaukee in response to the telegram of May 22d and remained until some time between the 6th and 9th of June. He again came in response to the telegram of the 14th, and remained in Milwaukee, contrary to his usual custom, from June 15th until July 10th, during which time he was frequently at the office of the company.

On June 25th the company was in such financial condition that its attorney sent letters to its creditors, and on June 30th a large number of creditors met and discussed during the day the company's affairs. Resolutions were adopted by the directors of the company consenting to the appointment of a committee to take charge jointly with the officers of the corporation in the management of the business, and that all checks thereafter to be drawn must be countersigned by one of the committee.

The defendant was in the offices where the meeting was held, but testified that he had no knowledge of the nature of the discussion. It is claimed by counsel for the respondent that this is incredible, and further proof that his testimony was not to be believed.

On June 19th the defendant loaned the company $5,000, delivering to it two checks of $2,500 each. At the same time the company delivered to the defendant its check for $5,073.91, the excess over $5,000 being for items of exchange, discount, and expenses in other transactions. The defendant did not deposit this check in any bank, but held it until the 25th of June, at which time it was handed back to the company in exchange for two other checks drawn by other companies with which the Metal Company had had dealings. The amount of these checks exceeded the check which had been delivered by the company to the defendant, and the amount of the excess was paid by a check of the defendant.

During this period of six days during which defendant carried the check given him by the company there were no

funds in the bank available to pay checks. In his testimony before the referee in bankruptcy defendant stated that it was his invariable practice to deposit checks right away; that he deposited the checks in the regular course of business and immediately. It is claimed by counsel for respondent that this was another instance of the unreliability of the testimony of defendant.

In his testimony before the referee in bankruptcy defendant testified that he had no vouchers of any kind from the company; that he always tore up his check stubs at the end of the month, and that he did not keep canceled vouchers or back statements; that it was his habit to destroy them; and that it had always been his practice. The checks which had been delivered to the company were afterwards found in the office of defendant's attorney in Ludington, Michigan, and it was explained that they had been left there but the fact had been forgotten by the defendant.

The testimony on the part of defendant relied on to support the claim that equitable assignments of certain large accounts were made as security for loans by defendant was very confused and uncertain.

It is claimed that such an assignment was made of the account known as the Vulcan-Louisville Company, but the defendant testified at considerable length that this assignment was of a Waukesha account. The bankrupt had been doing business with both of these companies, and it is claimed that accounts or trade acceptances for orders made by them were agreed to be applied in part on certain of the loans made by defendant. There was no written assignment or agreement.

There had existed an arrangement by which the Progressive Metal Company had been furnished money by the Continental Credit & Trust Company on the strength of accounts assigned or to be assigned to it. There was positive testimony by defendant and Mike Sadek that on the 19th of June the loan by defendant of $5,000 on that day

was in exchange for the Waukesha account. The Progressive Metal Company did not ship the merchandise until June 21st, and payment was not due for thirty days. On the next business day after the alleged assignment to defendant the Progressive Metal Company assigned this account in writing to the Commercial Credit & Trust Company. The court found that there was no present transfer or assignment of the interest of the Metal Company in that account to defendant and that he at no time had any interest in the same.

The court also found that the net amount of two checks of the Lamp-Miller Company and the Loeffelholz Company in the sum of $5,073.91 received by the defendant on June 24th was delivered on account of the check of June 19th and without any new consideration. The court further found that on June 25th two other notes amounting to $550, by the Garden City Envelope Company, were delivered by the bankrupt to the defendant without any new consideration, and that on July 1st the bankrupt delivered another Loeffelholz check to the defendant, from which he received the net amount of $2,000, which was applied on the debt due him from the company.

The court found that these transfers of the Lamp-Miller Company and Loeffelholz Company and Waukesha Foundry Company checks, the Garden City notes, and the second Loeffelholz Company check were all for antecedent debts and were without any new consideration; that defendant had good reason to believe, when receiving these transfers, that he was receiving a greater percentage of his indebtedness than other unsecured creditors, and the court further found that the testimony of the defendant and that of his principal witness as to some of these transactions was not worthy of belief, and that at all times after June 16th defendant had reasonable cause to believe that the company was insolvent.

The court found that in consideration of one payment to the Metal Company there was a present and effectual as-

signment of the interest of the bankrupt in a trade acceptance of the Vulcan-Louisville Company for the same amount, and this was not included in the preferences.

A preference is defined by sub. *a*, sec. 60, of the Bankruptcy Act as follows:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

There seems to be no contention on the part of defendant's counsel that the company was not insolvent on and before the middle of June, 1920, but they earnestly claim that there was no reasonable cause for the defendant to believe that the payments to him would result in preferences.

If it were necessary for the trustee to prove that this reasonable cause for belief must be shown by direct statements made to the creditor, or by an examination of the books of the debtor, the contention would have to be sustained, since there was no proof of that character, and we have the positive denial by the defendant that he had any knowledge or reason to believe the company was insolvent.

It would be extremely difficult to enforce the provisions of the statute regarding preferences to creditors if the kind of direct evidence above referred to were indispensable. Since the amendment of 1910 to the Bankruptcy Act it is not necessary to prove that the transfer was intended by either party as a preference. If the transfer operates as a

preference, "and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person." Sub. *b*, sec. 60, Bankruptcy Act.

It will be seen that it is the effect of the transfer rather than the intent of the debtor or creditor which is controlling when the insolvency of the debtor is shown. Under the statute and the authorities it is not necessary to show actual knowledge or an actual belief on the part of the creditor receiving the transfer, but reasonable cause to believe. This may be established by proof of knowledge of such facts as would lead an ordinarily prudent business man to believe the transfer would effect a preference. 2 Collier, Bankruptcy (12th ed.) p. 904, and cases cited.

In determining this question of reasonable cause for belief there are many facts and circumstances other than those which might be acquired by direct statements to the creditor, or the examination of books, which may have a bearing. The facts showing the relation of the parties, their intimacy or lack of it, the usual or unusual nature of the transfer, the opportunities of the creditor for knowledge, the participation of the creditor, if any, in the business of the debtor, the fairness or unfairness of the witnesses as to the disclosure of relevant facts within their knowledge, are all subjects which may be properly considered in determining whether there was reasonable cause for belief within the meaning of the statute.

In respect to the assignment of accounts and trade acceptances, the testimony of defendant and Michael Sadek was so uncertain and contradictory that the trial court might well have believed that no present valid assignment was made except in the instance where a trade acceptance was actually turned over at or about the time of the transfer,

in which case the claim that there was a preference was disallowed.    There was no order given by the debtor for the payment to defendant of the accounts.

At times the testimony of defendant and Sadek described the alleged assignments as those of accounts; at others, as of trade acceptances expected to be received.    At these times there were no trade acceptances in existence and the goods had not been shipped by the company.    Undoubtedly if there had been a valid assignment of trade acceptances and accounts at the time the loans were made, and these assignments had been made as security for the loans, they should be upheld even though the company was insolvent at the time.    *In re Little,* 110 Fed. 621, 6 Am. Bankr. Rep. 681; *Young v. Upson,* 115 Fed. 192, 8 Am. Bankr. Rep. 377; *Sabin v. Camp,* 98 Fed. 974, 3 Am. Bankr. Rep. 578; *Cox v. First Nat. Bank,* 126 La. 88, 52 South. 227; *Wilder v. Watts,* 138 Fed. 426, 15 Am. Bankr. Rep. 57; *In re J. F. Grandy & Son,* 146 Fed. 318; *In re Farmers' Supply Co.* 170 Fed. 502.

The assignment in such cases need not be in writing, but it must be specific.    In this connection the language used by Mr. Chief Justice WINSLOW in *Lauerman Bros. Co. v. Riehl,* 156 Wis. 12, 16, 145 N. W. 174, is pertinent:

"There was no valid assignment of the accounts in this case because the words relied upon were not words of present transfer, but merely words indicating an intention to make a transfer at some future time, and were unaccompanied by the delivery of the books or the accounts, or any other act indicating an intention to relinquish the control over the accounts or pass the title to the garnishee."    See *Dirimple v. State Bank,* 91 Wis. 601, 606, 65 N. W. 501; 5 Corp. Jur. 897, 898.

There was no evidence that these transactions were in the usual course of business which had been carried on between the company and defendant in former years, and the court refused to find that each of the transactions involved in this action was separate and complete.

We cannot agree that in receiving the payments held preferential there was no depletion of the bankrupt's estate. It is true that only a short time elapsed between the loans and the transfers or payments. But the court held that these payments were for unsecured, antecedent indebtedness. They were made within the four-months period prescribed by statute and when the debtor was insolvent. If a merchant buys a bill of goods on credit, giving no security, and subsequently pays for them while insolvent, the payment may be set aside as a preference by the trustee in bankruptcy if the creditor had reasonable cause to believe the payment would effect a preference; and the fact that the sale and the interval between the sale and the payment is a short one is no defense. *In re John Morrow & Co.* 134 Fed. 686. The statute makes no exception creating such a defense.

It is a well settled rule that a payment of money is a transfer within the meaning of the bankruptcy statute, and legally the defendant was in no better attitude than if he had sold the company goods on credit.

It is earnestly argued that the loans were made and the payments received in good faith. This is not an action to set aside transfers on the ground of active fraud under sub. *e,* sec. 67, of the Bankruptcy Act, and there is a wide difference between actions under this section and the section on which this action is based.

"In a preferential transfer the fraud is constructive or technical, consisting in the infraction of that rule of equal distribution among all creditors which it is the policy of the law to enforce when all cannot be fully paid. In a fraudulent transfer the fraud is actual, the bankrupt has secured an advantage for himself out of what in law should belong to his creditors, and not to him." 1 Loveland, Bankruptcy (4th ed.) p. 977, quoting *In re Maher,* 144 Fed. 503, 509, 16 Am. Bankr. Rep. 340; *Githens v. Shiffler,* 112 Fed. 505, 7 Am. Bankr. Rep. 453.

Defendant's counsel urge that the loans were friendly

acts by a "good Samaritan" and that to hold the payments preferences causes extreme hardship. Hardship is generally suffered where a creditor receives less than full payment for an honest loan.

Under the Bankruptcy Act preferences may be set aside by the trustee on the theory that equality between creditors of the same class is equity; that it is a better administration of justice that there should be such equality than that a favored few, even though they may be diligent, should receive the lion's share of the estate.

This is peculiarly a case where much consideration should be given to the findings of the trial judge. The transactions on the showing of defendant were complicated. His testimony was confused and often very inconsistent and contradictory. Established facts as to the conduct of the other principal witness showed that his testimony should be carefully scrutinized. It is clear that the trial judge did not believe that the evidence of either of these witnesses as to important transactions was worthy of belief, and that was a subject especially within his province.

Many of the facts proven were circumstantial, from which various conflicting inferences might have been drawn. The trial judge, seeing and hearing the witnesses, came to the conclusion that the evidence did not show that equitable assignments had been made as claimed, and to the conclusion that the defendant had reasonable cause to believe that the payments held preferences were such in fact. Even though we might have reached different conclusions we should hardly feel justified in setting aside the findings of the trial court. *Hubbard v. Ferry,* 141 Wis. 17, 123 N. W. 142; *Spuhr v. Kolb,* 111 Wis. 119, 86 N. W. 562; *Ripon H. Co. v. Haas,* 163 Wis. 592, 158 N. W. 330; *Olson v. Olson,* 149 Wis. 248, 135 N. W. 836; *Kola L. Co. v. Stoughton W. Co.* 143 Wis. 329, 127 N. W. 974.

Counsel for respondent served notice for a review, pursuant to sec. 3049a, Stats., of a finding of the court by which

it refused to grant the plaintiff a recovery of another alleged preference. We have reviewed the testimony on the subject and we see no reason to reverse the finding of the trial court.

*By the Court.*—Judgment affirmed.