Joseph J. RICOTTA, as Trustee of L. E. Kimball Construction Co., Inc., Bankrupt, Plaintiff,

v.

BURNS COAL AND BUILDING SUPPLY COMPANY, Defendant.

Civ. A. No. 7564.

United States District Court W. D. New York.

April 21, 1958.

Palmer & Spann, Dunkirk, N. Y. (Anthony J. Spann, Dunkirk, N. Y., of counsel), for plaintiff.

Woodin & Woodin, Dunkirk, N. Y. (Edwin G. O'Connor, Brocton, N. Y., of counsel), for defendant.

MORGAN, District Judge.

The above entitled cause is one for recovery by trustee in bankruptcy of the sum of $11,863.46 paid to defendant creditor within four months of adjudication for debts incurred prior to four months before the bankruptcy petition, as well as for $3,000, which represented payment of $1,888.97 and $1,111.03 for balances due in May and prior to July 7, 1956. The latter was represented by a check which was given and deposited on July 6, 1956 and the trustee urges that since it was not credited on the books of the bank where deposited by Burns Coal and Building Supply Company until Monday, July 9th, "payment" was not effected until within four months of the bankruptcy.

The adjudication in bankruptcy occurred on November 7, 1956. There were many witnesses and the case consumed a considerable amount of court time. Without specifying the detail of each of the many witnesses, suffice it to say that the issue is whether or not the $11,863.46 paid after July 7, 1956, on indebtedness due and owing the defendant company by the plaintiff, for balances prior thereto, constituted a preference, as defined in section 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, which reads:

"A preference is a transfer * * of any of the property of a debtor to

or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy [or a proceeding under this Act], the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

■ The essential elements of a voidable preference are:

1. A transfer on an antecedent debt; a preference is a transfer as defined in this Act of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt made or suffered by such debtor.

2. A transfer made by an insolvent debtor who is insolvent.

3. A transfer made within four months before bankruptcy.

4. A transfer resulting in an advantage to a creditor.

5. Reasonable cause for creditor to believe the debtor is insolvent.

■ The second issue is disposed of easily. Credible evidence was adduced to indicate that the check, though drawn by Dalton B. Burgett on his Regent Theater account to the bankrupt corporation, in the sum of $3,000 and dated July 6, 1956, was deposited on that same day to the credit of Burns Coal and Building Supply Company after having been endorsed to it by the plaintiff company, by L. E. Kimball, President, immediately upon presentation to him. It was further testified, without contradiction, that the custom and practice of the Dunkirk Trust Company was to keep open on Friday for deposits and withdrawals and other banking business. July 6, 1956 was a Friday. It was further the custom and practice of this bank not to make the book entry until the following Monday, in this case, July 9, 1956. Even though it appears

that the debt incurred, for which the $3,000 was paid, was prior to the four months period, all was done except the mere ministerial act of charging an account which was active and had more than sufficient funds to cover the check; except the bookkeeping entry on the following Monday. For the above reasons, we believe that the $3,000 item is not collectible in this case.

As to the balance, these facts are of some value to intelligible understanding of this opinion. Dalton B. Burgett was a man of substance and large financial resources. He was, in substance and effect, the defendant company. He owned the Regent Theater, drawer of the last named check, and of many other companies and interests. He was financially able to and did grant several mortgages to the bankrupt, to L. E. Kimball personally and to others. He was a director of the Dunkirk Trust Company, closely associated with his personal attorney, Mr. Glenn Woodin, who was also a director and vice-president of the same trust company, and with Mr. Dew, its president. There was evidence from the appearances and attitude of the witnesses at the trial that most of the materialmen who testified, as well as Mr. Dew, Mr. Woodin and Mr. Lewis W. Tastor, secretary-treasurer of the Dunkirk Savings and Loan Association, were all so closely allied with Mr. Burgett, and valued his business and association to such an extent as to be inclined to remember or fail to remember such things as would be helpful or detrimental to Mr. Burgett, as sole proprietor of the Regent Theater and the Burns Coal and Building Supply Company, as director of the Dunkirk Trust Company and as a man who was financially able to and did loan mortgage money. It was apparent to this court that Dalton B. Burgett knew what was the financial status of not only the bankrupt corporation, but of many other individuals and corporations.

Many cases were cited by both plaintiff and defendant,[1] and each party's attorney

I. See Appendix.

in his briefs and memorandum present ardent, lengthy and well developed arguments from those cases in support of his respective position. To discuss each of these cases in detail would unduly lengthen this opinion, as would a detailed discussion of the testimony of each witness. Having heard each witness and noticed his demeanor on the stand, and carefully considered the briefs and memoranda submitted, the court is impressed by certain salient points. That Mr. Burgett made almost daily contact with Mr. Kimball and other materialmen and suppliers; helped Mr. Kimball twice to meet his payroll; and personally gave him a $16,500 mortgage, although Mr. Burgett and Mr. Woodin testified that they had no knowledge of the reason for such mortgage, nor where the funds were to go. It is incredible to assume that a man of such business astuteness as Mr. Burgett, and one of such long legal experience as Mr. Woodin, would make and close mortgage loans without such knowledge. Moreover, the witnesses Bartello and Pietro and others testified to the satisfaction of this court that they, long prior to July 7, 1956, had refused credit to the bankrupt corporation and either put it on a cash basis, or were continuing to furnish materials for the houses being built by such bankrupt corporation, only when assured by Mr. Burgett that they would not lose anything thereby.

In addition to all the other connections which Mr. Burgett had, he owned Walts Sports Store, and both Burns Coal and Building Supply Company and Walts Sports Store were subscribers to Fredonia-Dunkirk Credit Bureau. Although he claimed on the stand that he did not check on Mr. Kimball's credit, but took Mr. Kimball's "word for it", the court, as the trier of the facts finds otherwise. There were submitted all of the checks from July 6, 1956 to October 22, 1956 which, whether issued by Dalton B. Burgett, as owner and sole proprietor of the Regent Theater, or the Dunkirk Trust Company, were paid. All mortgage loans were deposited to the credit of the defendant company, as shown by its own audit (defendants Exhibit B) on indebtedness occurring prior to July 7, 1956 in the total sum of $14,863.46. As previously stated, the $3,000 item is not considered a preference. However, from the daily contacts and all the conversations and testimony, including the fact that the only evidence L. E. Kimball Construction Co., Inc. had as to its recurrent balances, came from the Burns Coal and Building Supply Company, the court finds:

I. That checks were returned marked insufficient funds from July 16, 1956 through August 16, 1956 which had been drawn by L. E. Kimball in the total amount of $10,924.90.

II. That the amount listed in the bankruptcy schedules at the time of the adjudication on November 7, 1956, as to the defendant corporation as a creditor, was the sum of $1,844.55, while on June 30, 1956, just prior to the four months period, the bankrupt owed the defendant company $14,504.44.

III. That the purchases by the bankrupt corporation, from July 1, 1956 to October 30, 1956, were almost entirely on a cash basis, except for the payments made to this defendant company.

IV. The defendant company's chief defense that these claims were lienable and hence could not be considered a preference, even though not filed, depends upon citation of cases outside the State of New York and is contrary to the New York State Lien Law, section 10. See also Travis v. Nansen, 176 Misc. 44, 26 N.Y.S.2d 590. It is true that the liens could have been filed after the adjudication if they were filed within four months of the completion of the work on the various houses, but they were *not filed* and hence the legal argument fails.

V. There was a tax lien filed by the United States of America in the sum of $3,027.85 for withholding tax against the bankrupt corporation, which lien precedes any claim by the defendant company.

VI. All of the essential elements of voidable preference have been shown to the satisfaction of this court, to wit:

1. It must be a "transfer" as that term is defined by the Bankruptcy Act, of property of a debtor by or against whom a petition is later filed initiating proceedings under the act, made "or suffered" by him to or for the benefit of a creditor, for or on account of an antecedent debt.

2. The transfer must have been made or suffered by the debtor "while insolvent".

3. It must furthermore have been made or suffered "within four months before the filing by or against him of the petition initiating a proceeding under" the Bankruptcy Act.

4. The effect of the transfer must be such as "to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class".

5. The creditor receiving the transfer, or to be benefited thereby, or his agent acting with reference thereto, must have had, "at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent".

■ VII. The defendant's claim that the stipulation concerning the legality of all the mortgages vitiates the plaintiff's cause of action is without foundation in view of the fact that on June 11, 1957, before the Hon. James R. Privitera, Referee in Bankruptcy in and for the Western District of New York at the City Hall, Dunkirk, New York, plaintiff trustee examined L. E. Kimball, president of the L. E. Kimball Construction Co., Inc., the bankrupt, Dalton Burgett, president and majority stockholder of the Burns Coal and Building Supply Company, the defendant in the present action, to determine whether the trustee had a prima facie case of a voidable preference against the above defendant and alleged preferred creditor. Thereafter, and prior to commencement of this action, the said Referee in Bankruptcy authorized the trustee to bring a plenary suit.

VIII. Joseph J. Ricotta, as Trustee of L. E. Kimball Construction Co., Inc., bankrupt, is entitled to recover from the defendant, Burns Coal and Building Supply Company, the sum of $11,863.46, which amount is held to be a voidable preference.

No further judgment or order is necessary. It is so ordered.

### Appendix

Plaintiff cites (on reasonable cause for creditor to believe the debtor is insolvent) McDougal v. Central Union Conference Ass'n of 7th Day Adventists, 10 Cir., 110 F.2d 939, 42 Am.Bankr.Rep. 650; Matter of Cox, 7 Cir., 132 F.2d 881, 52 Am.Bankr.Rep. 303; Pender v. Chatham Phoenix National Bank and Trust Co., 2 Cir., 58 F.2d 968, 21 Am.Bankr.Rep., N.S., 315; Goetz v. Zeif, 181 Wis. 628, 195 N.W. 874, 3 Am.Bankr.Rep. 532 and (to offset defendant's theory of lienable claims) Herrmann & Grace v. New York, 1909, 130 App.Div. 531, 114 N.Y.S. 1107, affirmed 199 N.Y. 600, 93 N.E. 376; Tisdale Lumber Co. v. Read Realty Co., 154 App.Div. 270, 138 N.Y.S. 829; City of New York v. Hall, 2 Cir., 1944, 139 F.2d 935, 55 Am.Bankr.Rep.,N.S., 155, 158; Sec. 67, sub. b of the Bankruptcy Act; Sec. 1633 Volume 4 of Remington on Bankruptcy; House Report No. 1293 on S. 88 interpreting section 60, sub. a (6) and Bachner Inc., v. Eickhoff & Co., Inc., D.C., 27 F.Supp. 105, 39 Am.Bankr. Rep.,N.S., 218.

The defense urges that all the payments made by Kimball to Burns covered lienable claims and therefore cannot constitute preferences, Remington on Bankruptcy page 112, 4 Remington, sec. 1665, sec. 36–a of New York Lien Law; In re Heintzelman Construction Co., D.C.N.Y. 1940, 34 F.Supp. 109; Vanderlip v. Walker, 1932, 144 Misc. 629, 259 N.Y.S. 289; Root Mfg. Co. v. Johnson, 7 Cir., 219 F. 397, 34 Am.Bankr.Rep. 247; In re Conrad, 26 Am.Bankr.Rep.,N.S., 600; Public National Bank & Trust Co. v. Fortinberry, Tex.Civ.App., 53 S.W.2d 113; McKenzie v. Irving Trust Co., 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305.