### SUMNER v. PARR.

### In re GEORGE A. GAY & CO.

#### (District Court, S. D. New York. June 20, 1919.)

1. **Bankruptcy** ☞303(3)—**Creditor held not shown to have known preference would result from security.**

In a suit by a trustee in bankruptcy against a creditor, evidence that the creditor, when he took security, knew that the debtor was embarrassed for cash to pay her debts, and knew the extent of her assets, consisting of equities in real estate, without evidence of the value of those equities, *held* insufficient to show that the creditor knew that a preference would result.

2. **Bankruptcy** ☞166(3)—**Price at sale under hammer not evidence of value of real estate equities.**

The fact that equities in real estate owned by the bankrupt produced little or nothing when sold under the hammer is not proof that they were of no value, so as to charge a creditor, who took security with knowledge of the existence of those assets, with notice a preference would thereby result.

3. **Bankruptcy** ☞166(3)—**Knowledge preference might result is insufficient.**

Under the Bankruptcy Act (Comp. St. §§ 9585–9656), requiring belief by the creditor that a preference will result to make a conveyance void as a preference, belief that a preference might result from the transfer is insufficient.

In Equity. Suit by Malcolm Sumner, as trustee in bankruptcy of George A. Gay and another, doing business as George A. Gay & Co., against Benjamin Parr. Decree for defendant.

Myle J. Holley, of New York City, for plaintiff.
I. Goetz, of New York City, for defendant.

LEARNED HAND, District Judge. [1] Although the evidence of the bankrupt's insolvency of May 29th is absent, strictly speaking, I shall disregard that feature of the case, and assume that the only

issue left open is of the defendant's knowledge that the transfer would result in giving him a preference. He knew that the bankrupt had been doing a prosperous business, and had had very substantial, if not large, interests in real property. He knew that she had been slow in her payments for some time, and that he had been obliged to take notes from her, first for $500, and finally, in the autumn of 1917, for $1,000. He necessarily knew, as he had repeatedly asked her to pay up, that she did not have enough ready money to do so. In other words, he knew that she was getting into an embarrassed financial condition. In taking the notes, he says his chief purpose was not to have so much money outstanding without interest, and this was undoubtedly so; but in taking security he was certainly actuated by suspicion of the continued sufficiency of his debtor's circumstances. He knew also that her total indebtedness amounted to some $6,000 or $7,000; in fact, it probably was $2,000 or $3,000 greater than this; but there is no evidence that he knew of any more, and, as she had told him what the facts were, I think he might reasonably have rested without further inquiry.

[2] He also knew of the extent of her assets. These assets consisted of equities in various pieces of real property; but there is throughout the case not a scintilla of evidence to show what was the real value of those equities, except the fact that when sold under the hammer they produced little or nothing. I cannot accept this proof as equivalent to a showing of what their value was. Even if it may be some evidence of value, the values of real property, as they are estimated by experts and are relied upon in general, are in no sense determined by what the property will bring at auction. Therefore, while the defendant knew the assets, there is no evidence of their value, nor can I tell what he would have found it to be if, using the information she gave him, he had made inquiry of qualified experts. The Twenty-Third street property alone had had an equity of some $33,000 over a mortgage of $17,000 seven years before. It may have dwindled to nothing, but I have no means of telling what it was, except the fact that it brought deficiency upon foreclosure. The same thing in general is true of the other pieces of property, all of which had substantial values some time before. If I am to take notice that real estate values in New York had gone off enormously, I should also observe that the shrinkage was perhaps at its lowest in the spring of 1918. The difficulty with the case in this aspect is that the plaintiff, on whom the burden rests, has not given any proof from which those values could be ascertained.

[3] Therefore the defendant's knowledge may be put in this form: There were no immediate suspicious circumstances. Nothing had just happened which should have caused him to suppose that the bankrupt was any nearer insolvency than she had been for some time past. Finding his debtor unable to make ready payments, and knowing that she had substantial property, he became suspicious, and dissatisfied with the delays, and took security. If this charges him with knowledge that the security will create a preference, then so is every creditor who takes security because he has become doubtful and sus-

picious of the eventual insolvency of his debtor. When the statute requires belief that a preference will result, it means more than this; for the taking of security only shows that the creditor has cause to believe that a preference might result. The two are very different. It may be the difference is only one of degree, but the statute establishes it none the less. In this case the proof goes no further than to show that it might.

The defendant may take a decree, but, under all the circumstances, without costs.