Conway flatly contradicted this testimony, and, if the matter had rested there, I should of course affirm the master's finding, but it did not. Conway was sedulously cross-examined on the point, and given every opportunity to qualify or correct his denials. Then it was shown that on February 3, 1921, he had writen to Lowenthal a letter which to my mind puts it out of any fair question that Lowenthal's recollection is the true one and that Conway is mistaken. That letter was in answer to one from Lowenthal on the preceding day, in which he wrote that he had already explained to Conway that it would be unfair to give him more than the executives got. Conway answered that it was unfair to expect him "to accept as full compensation the amount" of his earlier drawing account, $500 a month. Standing alone, this might not have been enough to prove that Lowenthal had in the past unconditionally taken that position, but the conclusion of the letter puts the fact beyond doubt. It reads as follows: "The only proposition which I have received from you is to pay me in full compensation a drawing account which, as just stated, I cannot see my way to accept. If you have any further proposition, I would be very happy to listen to it."

It does not seem to me open to any debate in the face of this letter that, just as he says, Lowenthal told Conway some time in January (he says it was early in the month) that the payments were to be in full compensation. I agree that Conway never assented to these terms and was constantly pressing for some modification of them. It may also be true that Lowenthal was willing and anxious to secure for him some added pay out of the new company, and that in the spring of 1922, and after Conway's services had ended, he was even willing to pay him $4,000 by way of disposing of his claims. Still, after reading all the testimony, I find nothing to show that there was any change in Lowenthal's position before December 24, 1921. On that day the services were concluded, and the rights of the parties became fixed. In corroboration of this conclusion I may say that I can see no reason why Lowenthal should have wished to change this decision or to pay Conway, the manager of the yarn department, more than Drew, the president, or any other executive. When, therefore, he received his January check and all other checks, Conway had his option, being on his own written admission advised that it was to be in full compensa-

tion, either to turn it back and press for larger pay, or to take it and be satisfied.

I sustain the exceptions to the master's report as being against the weight of evidence. The petitioner may take an order for $1,500, the extra compensation for November and December at the rate of $1,250 a month. The disbursements will be divided in the proportion of three-quarters against Conway and one-quarter against the estate.

---

Sumner L. SAMUELS, Plaintiff, v. E. F. DREW & CO., Inc., Defendant. In the Matter of the Claim of John F. CONWAY against the Receiver or Receivers of E. F. Drew & Co., Inc., Claimant Appellant.

(Circuit Court of Appeals, Second Circuit. May 4, 1925.)

No. 322.

Appeal from the District Court of the United States for the Southern District of New York.

See, also, 286 F. 278, 281.

Poore & Webster, of New York City (John G. Poore, of New York City, of counsel), for appellant.

Lowenthal, Szold & Perkins, of New York City (Maxwell Brandwene and Malcolm P. Sharp, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

PER CURIAM. Order [7 F.(2d) 764] affirmed.

---

In re TAUB.

(District Court, S. D. New York. November 5, 1924.)

Bankruptcy ⬅➡303(3)—Evidence held insufficient to avoid transfer as preference.

A creditor, at the time claims were assigned to it by bankrupt as additional security for his indebtedness, *held*, on the evidence, not chargeable with knowledge of facts which gave it reasonable cause to believe that the debtor was insolvent or that the transfer would work a preference, so as to render it voidable under Bankruptcy Act, § 60b (Comp. St. § 9644).

In Bankruptcy. In the matter of Louis Taub, bankrupt. On review of order of referee holding transfer preferential. Reversed.

Zalkin & Cohen, of New York City, for
Sgobel & Day, Inc.

David Haar, of New York City, for Trustee.

WINSLOW, District Judge. This matter comes before the court on a petition to review an order made by the referee in bankruptcy holding, in substance, that an assignment of certain railroad claims to Sgobel & Day, Inc., by the bankrupt prior to his adjudication, should be set aside, on the ground that at the time of such transfer the assignee "had reasonable cause to believe that the enforcement of the transfer of the claims would effect a preference" under section 60b of the Bankruptcy Act (Comp. St. § 9644).

The testimony of the two witnesses, Stokes, the vice-president of Sgobel & Day, Inc., and the testimony of the witness Taub, are all that we have from which to determine whether or not the conclusion of the learned referee is justified. Sgobel & Day, Inc., had been in business for many years, and had dealt with the bankrupt over a long period of time, apparently upward of 12 years. This fact is indicative of an intimate business relationship.

The witness Stokes had three conversations with the bankrupt prior to the assignment of the claims which are in dispute in September and October preceding the bankruptcy, which occurred in or about November, 1922. The accounts payable to Sgobel & Day, Inc., were overdue at the time of these conversations. Stokes said to the bankrupt, "I told him I wanted the money." The bankrupt said, "He will pay it * * * soon as I can." At the time of the second conversation, when the bankrupt was again asked for money, the bankrupt "stated repeatedly, 'I have not got the money now, just now, but I will give every cent I owe you; you will get every cent I owe you.'" The witness then said, "That is not satisfactory, I want to see some cash." The bankrupt replied, "You will get it." He further testified that the responses of the bankrupt were not satisfactory because they were only promises, and that he said that he feared he was not going to get his money "because I was not getting it." Payments theretofore had been promptly made. When asked again as to whether he was fearful as to the payment of the indebtedness, Stokes, in substance, said he was not sure about it. He did not, however, hear anything unfavorable in the market about Taub, although he made inquiry from other dealers concerning his promptness in payments. Such dealers said they did not know anything against him. One creditor said that "Mr. Taub was paying his bills promptly."

Again, in the course of one of those conversations, when the bankrupt was again asked why he did not pay Sgobel & Day, Inc., the bankrupt replied that "he had a lot of cars rolling, and he was waiting for these cars to be sold so that he can turn these goods into cash." Stokes testified further that the delay in payment impelled him to ask for the money "because I did not think it was right to keep us waiting;" that he wanted the bankrupt "to assign these claims to us to be part security for his indebtedness." The bankrupt did not tell the creditor how much he owed, and the creditor did not know—"I didn't have the faintest idea."

This testimony is, of course, of value, as indicating whether or not the debtor was in possession of facts from which the conclusion may be drawn that the debtor's affairs were sufficiently known to the creditor, and the facts known were of such a character that he, as a prudent business man, had "reasonable cause to believe" that "the enforcement of * * * the transfer would effect a preference."

It is true that actual knowledge of insolvency is not a condition precedent—nor even a belief of insolvency—to justify the conclusion that the creditor had reasonable cause to believe that the bankrupt was insolvent at the time of the assignment and that the transfer would effect a preference; but, on the other hand, it is not sufficient that the creditor merely has some suspicion. He must have a knowledge of facts sufficient to induce a reasonable belief on the part of a patient man as to the debtor's insolvency and the effect of a transfer. He may be unwilling to trust him further; he may feel anxious about his claim; and he may have a strong desire and make the effort to obtain security for his debt, but these things are the ordinary mental operations of a prudent business man. Obtaining additional security, as in this case, is by no means an act which justifies the conclusion that the bankrupt was insolvent or that the creditor had reasonable cause to believe him so. Indeed, the assignee, as stated, testified that he knew nothing about indebtedness to others, if any there was, and was assured by the bankrupt that the question of cash was

a matter of waiting for cars then rolling to be turned into cash. The bankrupt himself testified to his belief that he was solvent up to the time the petition in bankruptcy was filed, "up to the last minute." Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971; Sumner v. Parr (D. C. N. Y.) 270 F. 675.

Further reference might be made to the testimony of the two witnesses, but the excerpts quoted are sufficient, to my mind, to warrant the conclusion that the assignee of the claims did not have reasonable cause to believe that the bankrupt was insolvent at the time of the assignment of claims or that the transfer would effect a preference.

I am of the opinion that the order of the learned referee, setting aside the assignment made to Louis Taub, the bankrupt, to Sgobel & Day, Inc., of certain claims, should be reversed and set aside.

---

## In re ROSENBERG.

(District Court, W. D. Pennsylvania. April 16, 1925.)

### No. 11616.

Bankruptcy ⟨⟩⟩⟩400(4)—Evidence held insufficient to establish concealment of assets.

The burden of proving concealment of assets by a bankrupt rests on a creditor alleging it, and the fact of a discrepancy between a financial statement made by bankrupt and the assets scheduled is not sufficient to outweigh his testimony, which shows that the statement must have been incorrect.

In Bankruptcy. In the matter of Meyer R. Rosenberg, individually and trading as the Rosenberg Shoe Company, bankrupt. On review of order of referee dismissing exceptions to allowance of exemptions. Order confirmed.

I. A. Melnick and David S. Keilly, both of Pittsburgh, Pa., for bankrupt.

Harry Ravick, of Pittsburgh, Pa., for Ideal Specialty Shoe Co.

Lambert Turner and Weil, Christy & Weil, all of Pittsburgh, Pa., for Selz, Schwab & Co.

GIBSON, District Judge. A creditor in above matter objected to the allowance of exemption to the bankrupt on the ground: "(1) Creditor believes that bankrupt ob-

tained credit through false and fraudulent statements; (2) creditor is of the opinion that the bankrupt has concealed assets." The referee dismissed the exceptions, and the matter has been certified to this court for review.

As to the first exception: The referee has found that the evidence does not sustain the claim that goods were obtained by means of false and fraudulent statements. It was shown that the bankrupt had given a statement which did not correctly set forth his financial condition, but no goods had been obtained by means of it.

The charge of concealment of assets is based entirely upon the financial statement hereinbefore mentioned. We quite agree with the learned referee when he holds that the testimony plainly establishes the fact that the statement was incorrect but does not establish a concealment of assets. We adopt as our own the following quotation from the referee's report:

"The burden is on the excepting creditor to prove the alleged concealment of assets. This may be proved by circumstantial evidence, as by showing that the bankrupt recently had assets which have unaccountably disappeared. The financial statement relied upon to show such a disappearance, while evidence against the bankrupt, is not conclusive evidence against him, and is not sufficient to outweigh his sworn testimony which shows that the financial statement must have been wrong. The assumption that the bankrupt made a 25 per cent. gross profit is not established by the evidence, and cannot sustain a calculation to show merchandise not accounted for. The witnesses' account of bankrupt's operations from the beginning of business to the time of bankruptcy, while not wholly satisfactory or free from inconsistency, is not so incredible or defective as to convict him of concealing assets. The second ground of exception is not proved."

### Order of Court.

And now, to wit, April 16, 1925, the order of the referee in bankruptcy in and for Allegheny county, allowing exemption to above-named bankrupt, having come on to be heard, upon consideration thereof, it is ordered and adjudged that the exceptions to said order of the said referee be dismissed, and that said order be, and the same hereby is, confirmed.