COLVIN *v.* HORNING.

1. BANKRUPTCY—SETTING ASIDE TRANSFERS AS PREFERENCES—BURDEN OF PROOF.

Trustee in bankruptcy, seeking to set aside a mortgage given by bankrupt within four months previous to filing of petition, has burden of proof (11 USCA, § 96).

2. SAME—TEST OF INSOLVENCY.

In trustee's suit to set aside mortgage given by bankrupt, the test of insolvency is applied as of the time of the mortgage (11 USCA, § 96).

3. SAME—EVIDENCE OF VALUE.

In determining value of a bankrupt's property the basic standard is what it will sell for in the market, and while that may be modified somewhat by extraordinary temporary conditions, it would be unreasonable to attempt such modification where values of all properties are affected by a general depression of long standing and of uncertain duration and future effect, modifying considerations then being confined to the property itself.

4. SAME—PREFERENCES—INSOLVENCY—EVIDENCE.

Evidence of market value in suit by trustee to set aside preferential mortgage given by bankrupt on day before involuntary petition was filed *held*, sufficient to justify finding by court that bankrupt was insolvent in fact at time mortgage was given (11 USCA, § 96).

5. SAME—PREFERENCES—CREDITOR'S KNOWLEDGE—INSOLVENCY.

To set aside alleged preferential mortgage given day before filing of involuntary petition in bankruptcy, it is necessary to show that creditor should have some reasonable cause *to believe*, not merely to suspect, the debtor is insolvent and such reasonable cause necessarily depends upon the facts and circumstances of each case (11 USCA, § 96).

6. SAME—INSOLVENCY—CREDITOR'S NOTICE—REASONABLE CAUSE.

In trustee's suit to set aside mortgage on bankrupt's property as preferential, notice of creditor of debtor's then-existing insolvency sufficient to avoid the mortgage must be such as would be developed by such reasonably diligent inquiry as would be induced by facts known or apparent to a person of reasonable prudence under the circumstances (11 USCA, § 96).

7. SAME—EVIDENCE—INSOLVENCY—DEFALCATING ADMINISTRATOR— MORTGAGE TO SURETY—FINANCIAL STATEMENT.

Surety on bond of an administrator, an attorney, who, upon appearance of defalcation, took mortgage on all realty of administrator as shown by financial statement then given and which did not disclose large personal indebtedness to brother accruing over period of 30 years *held*, not reasonably charged with belief of debtor's insolvency at time of taking mortgage where statement, fair on its face, indicated property values sufficient to more than cover indebtedness and, aside from defalcation, known or apparent facts disclosed only a financial stringency then common to many others in the general depression (11 USCA, § 96).

8. APPEAL AND ERROR—FINDING OF FACT BY TRIAL COURT CONCLUSIVE.

Finding of fact by trial court in trustee's suit to set aside mortgage as preferential over bankrupt's other creditors would be conclusive if testimony is in dispute.

9. BANKRUPTCY—MORTGAGES—PREFERENCES—INFERENCES.

In trustee's suit to set aside mortgage on bankrupt's property as preferential where two inferences of substantially equal weight may be drawn from the proved facts, that inference should prevail which sustains the mortgage (11 USCA, § 96).

Appeal from Clinton; Searl (Kelly S.), J. Submitted June 4, 1936. (Docket No. 61, Calendar No. 39,015.) Decided October 5, 1936. Rehearing denied November 9, 1936.

Bill by Collins R. Colvin, trustee for George R. Heck, bankrupt, against William Horning, Standard Accident Insurance Company, a Michigan corporation, and others to set aside levies and a mortgage.

From decree for plaintiff, defendant insurance company appeals. Reversed as to defendant insurance company.

*Hayden, Hubbard & Rathbun (Robert T. Arvidson, of counsel), for plaintiff.*

*Shields, Silsbee, Ballard & Jennings (Stanley H. Fulton, of counsel), for defendant Standard Accident Insurance Company.*

FEAD, J. This is a bill by a trustee in bankruptcy to set aside, as unlawful preferences, levies on property of the bankrupt by the individual defendants and a mortgage to defendant insurance company. Plaintiff had decree against all defendants. Only the insurance company has appealed and we will call it the defendant.

In 1929 defendant executed a $2,500 bond as surety for George R. Heck as administrator. Selden Heck was surety on a separate similar bond in amount undisclosed in the record but with apparent actual liability of about $1,000. George Heck was an attorney at law. He misappropriated some of the funds of the estate of which he was administrator. This fact and the consequent liability of his sureties became known and recognized about the beginning of 1932. The deficiency apportioned to defendant's bond, about $1,700, has been settled and paid by defendant. Heck died prior to the hearing of this suit.

When defendant's liability on the bond was determined, and on February 3, 1932, Stanley H. Fulton, an attorney representing defendant, approached Heck for security, Heck furnished Fulton a financial statement, and on February 4th executed to defendant and delivered to Fulton a mortgage for $2,500

on all the property named in the statement. The
mortgage was recorded February 5th.

On February 5th an involuntary petition in bank-
ruptcy against Heck was filed. Later he was ad-
judged a bankrupt and plaintiff was authorized to
bring this suit.

The financial statement furnished to Fulton by
Heck set up: Benedict farm, 240 acres, assessed at
$16,000, with three levies aggregating about $9,000
and back taxes of $600 against it; Vaus farm, 185
acres, worth $6,000, foreclosure sale on mortgage of
$2,900 to be had February 7th; house and lot on
North Grand avenue, Lansing, mortgaged at $5,000,
with back taxes; house on Madison street, Lansing,
assessed $7,500, mortgaged for about $5,000, fore-
closed January 15, 1932, with year to redeem.

It is conceded Heck had no equity of value in the
Grand avenue property. The statement showed a
paper equity of $12,000 in the premises mortgaged
to defendant.

The testimony is that the Benedict farm was as-
sessed at $13,200 in 1931. A witness said its value
was $4,800. A certified copy of the appraisal in
bankruptcy, received without objection, indicated an
equity of about $4,000 in the bankrupt in all the
premises at the time of the mortgage, and listed also
personal property worth $383.

The schedule of claims filed, but without showing
of allowance of any, included $8,400 to the individual
defendants herein, $15,653 to Heck's brother Selden,
and miscellaneous claims of $3,100, a total of about
$27,000. There was no dispute of Heck's indebted-
ness to the individual defendants herein. The only
other claim proved in this suit was by Selden Heck,
who said the bankrupt owed him about $13,000 for
moneys advanced over a period of 30 years.

It is conceded that the burden of proof rests upon the plaintiff. Defendant contends there was no proof of insolvency. It offered no evidence of values of the property. Any computation, based upon the testimony received without objections, results in insufficient property to pay the undisputed claims of the individual defendants and Selden Heck.

Defendant, however, invokes a rule that these assessed, appraised and testified values do not represent the "fair valuation" of the property for the purpose of determining insolvency under the bankruptcy act because they assume to be the present market, salable or cash values, and, by reason of the depression which rendered sales scarce and at great sacrifice, were much below fair valuation. *Masonite Corporation* v. *Robinson-Slagle Lumber Co.,* 3 Fed. Supp. 754; *Sumner* v. *Parr,* 270 Fed. 675.

The test is insolvency at the time of the mortgage. The basic standard of the value of property necessarily must be what it will sell for in the market. Extraordinary temporary conditions may affect it and require allowances to find "fair" valuation. But when the values of all properties are affected by a general depression of long standing, the duration and future effect of which no one can know, it would be unreasonable to attempt to modify present values by a guess at future worth. In such case, modifying considerations must be confined to the character of the property itself. The record contains nothing which suggests that the bankrupt's property was exceptional, was not subject to the ordinary operation of economic laws, or had a special present value not fairly measured by the market. Nor, indeed, was there evidence of past values which would afford a basis for disregarding present market worth. Plaintiff's testimony established at least

a *prima facie* case of value and there was no impeaching testimony.

The court was justified in holding the bankrupt insolvent in fact when the mortgage was given.

The perplexing and difficult question arises out of the application of section 60 of the bankruptcy act (11 USCA, § 96), rendering transfers by an insolvent debtor within four months before the filing of the petition in bankruptcy voidable by the trustee if the "transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference."

In *Grant* v. *National Bank,* 97 U. S. 80, the court distinguished between "cause to believe" and "cause to suspect" that a person is insolvent and emphasized that the former is the statutory test, concluding:

"Hence the act, very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

Necessarily, the presence or absence of the reasonable cause to believe depends upon the facts of the case. It is so recognized by the courts and no fixed rules thereon have been attempted, although courts have declared certain conditions as having much force but always in connection with other facts. Consequently, discussion of illustrative cases is not particularly helpful.

It seems, however, that a rule has grown up in the Federal courts to the effect that:

"Notice of facts, which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop." *Farmers' State Bank* v. *Freeman*, 161 C. C. A. 505 (249 Fed. 579).

Reference to the large number of illustrative cases which have been cited by counsel indicates that this rule has been applied with varying degrees of latitude, even to the extent of practically nullifying the decision in the *Grant Case* by holding suspicious circumstances sufficient to put the creditor on inquiry and to bind him by the facts which inquiry would have disclosed. In the *Grant Case* the court construed the act with due regard to the practical necessities of business and the rights and difficulties of creditors. The law has always favored diligence in creditors and ought not to require them to imperil their claims by an inquisition of the debtor which would be resented by him. The rule of inquiry applies only when the facts known to the creditor or apparent to a reasonably prudent and intelligent person are sufficient to induce a reasonable belief in insolvency. In such case the creditor is not entitled to ignore known or apparent facts and accord them an innocent construction unless he inquires and finds they are innocent or is unable to find that they are evil. But in all cases the primary question is the facts known or apparent to the creditor.

Mr. Fulton's approach of Heck was not that of a creditor with an account past due and who feared insolvency of the debtor but was the ordinary, laudable business attempt of one to obtain or secure

reimbursement at the time he is called upon to pay out money. There was no intent to avoid the bankruptcy law as appears in some of the cases cited; nor did Fulton have it in mind. He asked for a financial statement and Heck furnished one showing only real estate and the claims thereon. Heck made no mention of his debt to his brother, nor did he mention other debts except in a general way. He protested that his real estate had sufficient value to pay all his debts and that his defalcation and financial difficulties were due entirely to the real estate situation. Heck was not a storekeeper, presumably having outstanding accounts payable for stock. He was not in a business which would carry a presumption of other debts. Fulton knew nothing of the value of the property. The statement was fair on its face and he could assume it represented approximate values. There was a spread of about $12,000 between such values and the debts reported. Aside from the debt to the brother Selden, the values as reported to Fulton would more than cover Heck's indebtedness. It would be absurd to charge Fulton with "reasonable cause to believe" that Heck owed his brother a debt of $13,000 to $15,000, running over a period of 30 years.

The adverse circumstances are that Heck had defaulted as an administrator, had judgments aggregating about $9,000 against him, owed back taxes, some of his property had gone to foreclosure, and he did not have a lucrative law practice. Those circumstances showed a present financial stringency. But similar conditions, except the misappropriation, confronted a multitude of people who were not heavily indebted to others and whose obligations were all or mostly attached to their property.

It must be confessed that the case is a close one. Were the testimony in dispute, the finding of fact by the circuit court would be controlling. But the essential issue is one of law—the scope and application of the rule of the duty to inquire. In our opinion, the mortgage to defendant should be sustained upon the principal announced in *Re Gaylord,* 225 Fed. 234, which correctly recognizes the duty to inquire, and states:

"He (trustee) must establish the existence of other creditors of the same class at that time, and that the enforcement of the security or transfer will operate to give them a lesser percentage of their debt than the secured creditor will receive by reason of his security given by such debtor, and he must also prove the existence of the 'reasonable cause to believe.' All this must be done by a fair preponderance of all the evidence in the case, and where inferences from proved facts are to be drawn, the rule obtains that if two inferences of substantially equal weight may reasonably be drawn from the proved facts, then that inference shall prevail which sustains the transfer or security."

Decree reversed and bill dismissed, with costs, as to defendant insurance company.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.