# Stone, Trustee, Appellant, *v.* Superior Fire Ins. Co.

*Bankruptcy—Payment to creditor after filing petition but without notice—Acts of Congress of March 2, 1867, 14 Stat. L. 522; July 1, 1898, 30 Stat. L. 544, and June 25, 1910, 36 Stat. L. 838— Insurance—Fire insurance—Payment to bankrupt policyholder.*

1. The unjust provision of the Bankrupt Act of March 2, 1867, 14 Stat. L. 522, which made invalid a payment to a bankrupt, after filing of the petition, although made in good faith and without

actual notice of the proceeding, was changed and corrected by the Act of July 1, 1898, 30 Stat. L. 544, and such change and correction was in no way affected by the later amending Act of June 25, 1910, 36 Stat. L. 838.

2. While a trustee in bankruptcy becomes vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, this applies only to property in existence at such time.

3. Where a fire insurance company, in settlement of a loss, has made payment to the insured, after the date of filing an involuntary bankruptcy petition against him, but before the adjudication, without knowledge of the petition, the trustee in bankruptcy, the insured having absconded, cannot compel payment by the insurance company a second time.

4. As the right of action against the insurance company had ceased to exist prior to the adjudication, there was no property in existence as to which the trustee could take title.

5. It is immaterial in such case whether there was a right of action at the time of filing the petition.

Argued October 1, 1923. Appeal, No. 5, Oct. T., 1923, by plaintiff, from order of C. P. Beaver Co., March T., 1921, No. 167, refusing to take off nonsuit, in case of Joseph K. Stone, Trustee in Bankruptcy of Giuseppe Gioffre, Bankrupt No. 9431, v. Superior Fire Insurance Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit on policies of fire insurance. Before BALDWIN, P. J.

The opinion of the Supreme Court states the facts.

Nonsuit. Refusal to take off.

Plaintiff appealed.

*Error assigned* was order, quoting record.

*Joseph Knox Stone,* with him *Roy M. Jamison,* for appellant.—The strongest case against plaintiff's contention is In re Zotti, 178 Fed. 304.

The amendment puts the Act of 1898, so far as the title that the trustee takes, exactly upon the basis of the old Act of 1867.

· Since the amendments of 1910 the trustee's lien attaches as of the date of the filing of the petition: Big Four Implement Co. v. Wright, 207 Fed. 535.

Filing of the petition is an assertion of jurisdiction, and the estate is then in custodia legis: Bailey v. Baker Ice Machine, 239 U. S. 268.

*John M. Haverty,* with him *John B. McClure,* for appellee.—The insurance company was released from further liability by payment to the insured: Metcalf v. Barker, 187 U. S. 165; Bailey v. Machine Co., 239 U. S. 268; Everett v. Judson, 33 Pa. Superior Ct. 568; Johnson v. Collier, 222 U. S. 538; York Mfg. Co. v. Cassell, 201 U. S. 344.

OPINION BY MR. JUSTICE SCHAFFER, January 7, 1924:

This is the question presented: Where a fire insurance company, in settlement of a loss, has made payment to the insured, after the date of filing an involuntary bankruptcy petition against him, but before the adjudication, without knowledge of the petition, can the trustee, the insured having absconded, compel payment by the insurance company a second time?

Gioffre owned a building covered by a policy of defendant company; on January 30, 1920, it was destroyed by fire. The insured made proof of loss March 20, 1920. An involuntary petition in bankruptcy was filed against him on April 13, 1920. August 28, 1920, the insurance company, without notice of the pendency of the bankruptcy proceeding, paid to Gioffre the amount of the policy, less a sum due on a mortgage covering the property. He was adjudged a bankrupt November 19, 1920, and on December 18, 1920, a trustee was appointed, who subsequently (Gioffre having absconded) began suit to recover from the insurance company the amount of money it had paid the bankrupt, less the sum paid the mortgagee. On the trial, the court entered a compulsory

nonsuit; the refusal to remove it brought about this appeal.

On first reading, there seems to be some confusion among the various cases in which the courts have been called on to determine the rights of those who in good faith have dealt with a bankrupt between the time of the filing of an involuntary petition and the adjudication. These cases are many and a review of all of them will not be attempted. A discussion of most of them can be found in 1 Federal Statutes Annotated, 2d ed., page 1154. Their careful perusal, having in mind the particular facts of each case, what the court was called upon to determine, the provisions of the Bankruptcy Act of 1898, and its amendment of 1910, dispels at least some of the fog.

Under the Bankruptcy Act of March 2, 1867, 14 Stat. L. 522, payment to a bankrupt, after filing of the petition, although made in good faith, and without actual notice of the proceeding, was not valid. Judge SHARS-WOOD, in speaking of that statute in Mays v. Manufacturer's National Bank, 64 Pa. 74, 77, thus characterized it: "This is an unjust and cruel law; and the effect of it may be to make bankrupts of honest and solvent men, who are only desirous of fulfilling their legal obligations. That all the world has notice of a transfer by operation of law, in proceedings in bankruptcy, is a mere fiction—not true in reality—......The attention of Congress ought surely to be called to this subject, and some suitable provision made to protect those who deal honestly, in good faith, and without notice, with bankrupts." That Congress did not intend to continue this injustice when it passed the Act of July 1, 1898, 30 Stat. L. 544, is made manifest by the provisions of section 70a of the statute, which provides, that the trustee shall be vested, by operation of law, with the title of the bankrupt, "as of the date he was adjudged a bankrupt." In our opinion, it would take more explicit language than that of the amendment of June 25, 1910, 36 Stat. L. 838, on which

appellant relies, to change this provision of the act, and to make its effect similar to that of the earlier statute. The amendment reads: "And such trustees as to all property in the custody or coming into the custody of the bankrupt court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied." "It was to obviate the prior limitation upon the right of a trustee to attack unrecorded conditional sale contracts and other like liens, that the amendment was passed": 2 Collier on Bankruptcy, 13th ed., 1053. "For the purpose of fixing priority between a trustee in bankruptcy and adversely claiming lien holders, the time of filing the petition is the vital date, and a lien invalid on that date cannot be perfected before adjudication so as to make it valid against the trustee......The filing of an involuntary petition does not, ipso facto, take from the alleged bankrupt his dominion over his property; while his disposition of his property may be invalidated and set aside under certain circumstances, such property remains under his control until the adjudication": 2 Collier on Bankruptcy, 13th ed., 1636.   As Congress in enacting the amendment of 1910 did not use the language of the Act of 1867, although necessarily familiar with the terms of that statute, it will not be deemed by us, under the dubious language it employed, to have intended to bring about the injustice worked by its prior law.   In considering the effect of the amendment of 1910, we said in Bank of North America v. Penn Motor Car Co., 235 Pa. 194, at page 200: "The manifest purpose of the amendment was to enlarge the rights, remedies and powers of a trustee in bankruptcy, and it had the effect of vesting in the trustee the rights, remedies and powers of a judgment or other creditor having a lien, and of an unsatisfied execution creditor without a lien at the time of instituting bankruptcy proceedings.   In other words, the trustee was given the power to assert every right which such creditors could have asserted during the

period of four months immediately preceding the filing of the petition in bankruptcy."

Certain declarations by the federal courts,—such as: "The filing of the petition by proper parties......making the requisite jurisdictional allegations......operates as a lis pendens, and notice to all the world": In re Billing, 145 Fed. 395 (1906). "The filing of the petition in bankruptcy is......'judicial process' and operates as an attachment or sequestration from that time of the property of the bankrupt, for the equal benefit of all of his creditors, and as a restraint upon its disposition by him": In re Smith & Shuck, 132 Fed. 301, 303 (1904). "The filing of the petition was a caveat to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were ipso facto in abeyance until the final adjudication......Those who dealt with his property in the interval between the filing of the petition and the final adjudication, did so at their peril": Bank v. Sherman, 101 U. S. 403, 406 (1880). "It is as true of the present law as it was of that of 1867, that the filing of the petition is a caveat to all the world, and is in effect an attachment and injunction......and on adjudication, title to the bankrupt's property became vested in the trustee with actual or constructive possession and placed in the custody of the bankruptcy court": Mueller v. Nugent, 184 U. S. 1, 14 (1902)—give standing room for the position assumed by appellant that payment to the bankrupt after the filing of the petition is invalid, but, we believe, other pronouncements of the federal courts negative the idea which he contends for, as for instance, In re Mertens, 144 Fed. 818, 823 (1906), where it was said: "Under the Act of 1867, no lien could be acquired after the filing of the petition in bankruptcy, because the title of the assignee vested as of the commencement of the proceeding in bankruptcy. Now the trustee takes the property of the bankrupt in the condition in which he finds it at the date of the adjudication, unless it has been encumbered fraudulently or in contra-

vention of some of the provisions of the act......The change in the present act, by which the trustee's title is that only which exists at the date of the adjudication, removes any uncertainty which arose under the Act of 1867. It was intended, we think, to permit all legitimate business transactions between a debtor and those dealing with him to be carried out and consummated as freely, until he has been adjudged a bankrupt, as though no proceeding was pending......While the filing of a petition in bankruptcy is a caveat to all the world, the notice ought not to have the effect of paralyzing all business dealings with the debtor, or to prevent lienors or pledgees from enforcing their contracts. This is its practical effect, if the rights and remedies of all concerned are in suspense, until it can be ascertained whether an adjudication is or is not to follow the commencement of the proceeding." In re Zotti, 186 Fed. 84 (1911), determined that a bank could not be required to pay money to a trustee, which it already had paid out on checks of the bankrupt, drawn after the filing of the petition, but before the adjudication. In that case, the referee ordered the bank to pay over on the ground that the petition was a caveat, attachment and injunction, of which the bank must be held to have had constructive notice and any payment by it thereafter was invalid as against the trustee. The circuit court of appeals in reversing used this language: "Section 70a of the Bankruptcy Act of 1898 provides that the title of the bankrupt shall vest in the trustee, as of the date of the adjudication, inter alia, to [5] property which prior to the filing of the petition he could have transferred, etc. This latter language is intended to define the property which passes, viz, such as the bankrupt owned at the time the petition was filed. The indebtedness of the bank to Zotti was property which he could have transferred. Until the adjudication the title to it remained in him, and if no receiver had been appointed we can conceive no ground on which the trustee's present claim could be rested. As

the court did appoint a receiver, it is to be presumed, in the absence of specific directions, that he was to hold as custodian, without title, for the purpose of preservation, and not for the purpose of distribution. The alleged bankrupt might never be adjudicated. The receiver did not demand Zotti's funds until after the bank had honored Zotti's checks, as it was bound to do without any notice of the filing of the petition. Payments after notice would no doubt be in contempt of the order appointing the receiver, but to require it to pay that sum over again to the trustee under the circumstances of his case would be in the highest degree inequitable." In Perpall's Case, 271 Fed. 466, 468 (1921), it was said: "A transfer made by a bankrupt subsequent to the filing of the petition, is not necessarily void. It is merely voidable, if made under such circumstances as to constitute such transfer a preference to the transferee within the provisions of section 60a and section 60b of the Bankruptcy Act......Until adjudication in bankruptcy, the title of the bankrupt's property remains in the bankrupt, and a valid transfer can be made by him......The Bankruptcy Act does not provide that any and all transfers made by the bankrupt subsequent to the filing of the petition and prior to the adjudication are absolutely void. The act provides that transfers may be voided by the trustee if they constitute a preference, and a preference is described by the act. It is only preferential transfers which are voidable. Preference implies paying or securing a preexisting debt of a person preferred. ......Where one gives an insolvent person value for a transfer of property, where he makes an exchange of property, there is no preference." It will be noticed that, when Bank v. Sherman (the language of which has given rise to most of the difficulties in decision) was decided, the old Act of 1867 was still in effect, so that the language used was perfectly correct, since under that statute title vested in the trustee as of the date of the filing of the petition. The same phrase used in that case

was used in a number of others, but they all seem to relate to situations where the alleged, bankrupt attempted to colorably transfer some of his property, or where a creditor attempted to attach some of the property to satisfy his debt. See State Bank of Chicago v. Cox, 143 Fed. 91 (C. C. A. 1906); Board of Commissioners v. Hurley, 169 Fed. 92 (C. C. A. 1909); Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300 (1911).

While, in Bailey v. Baker Ice Machine Co., 239 U. S. 268, the Supreme Court of the United States, considering the effect of the 1910 amendment, remarked (page 275), "When not otherwise specially provided, the rights, remedies and powers of the trustee are determined with reference to the conditions existing when the petition is filed," the opinion is careful not to say that the trustee takes title to the property of the bankrupt as of the date of the filing of the petition. This case, as we read it, only determined that the status given a trustee by the amendment of 1910 is effective as of the date of filing the petition. Everett v. Judson, 228 U. S. 474 (1913); Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300; and Bailey v. Baker Ice Machine Co., 239 U. S. 268, in certain of their expressions aid the argument of appellant, but none of these cases nor any of the others we have examined, decided since the 1910 amendment, hold that it changed the law as to the time when the trustee actually takes title to the bankrupt's property.

In Gunther v. Home Ins. Co., 276 Fed. 575, where the bankrupt, after involuntary proceedings commenced, sued out claims against fire insurance companies, and received settlements from them and where the trustee subsequently brought action and obtained a verdict, the latter's right to recover was sustained on the ground that the settlement with the bankrupt was not in good faith. The court there said (page 576) : "Defendants object to the sufficiency of the complaint, in that, in the interval between bankruptcy proceedings instituted and adjudication, a bankrupt in respect to his property had

power to conduct suits, and as a corollary to settle and conclude them. This will be granted: Johnson v. Collier, 222 U. S. 538, 32 Sup. Ct. 104, 56 L. Ed. 306. But the bankrupt's property is a trust fund for all creditors, and the bankrupt a trustee thereof. In consequence he and it are subject to the law of trusts and to the principles of equity applicable to trusts. Amongst these is that he and all parties dealing with him in respect to the trust property are bound to the utmost good faith and fair dealing; and though he have power to dispose of the trust property, if he does so to misappropriate the proceeds, *the purchaser and all others with reasonable grounds to believe he intends misappropriation, who aid therein,* are participators in his breach or devastavit, and equally with him liable to reimburse the beneficiaries."

Frederick v. Fidelity Mutual Life Ins. Co., 256 U. S. 395 (affirming 75 Pa. Superior Ct. 77), throws light on the question we are considering. There, after the trustee in bankruptcy qualified, the bankrupt died and the insurer, in ignorance of the bankruptcy proceedings, paid the beneficiary in a life policy issued to the decedent the full amount of the insurance. The trustee had not known of the policy, but, learning of it, brought action against the company for the amount of the cash surrender value thereof. Judgment for defendant was affirmed, Mr. Justice PITNEY saying, at page 398: "Here the question is whether, after the death of the insured and payment of the stipulated amount to the beneficiary named in the policy in strict conformity to its terms, without notice of the bankruptcy, or claim made by the trustee, there is a liability on the part of the insurance company to pay to the trustee the surrender value that, on complying with the terms of the policy, he might have demanded. It is not enough to sustain the trustee's claim to say that the filing of the petition in bankruptcy was a caveat to all the world, and in effect an attachment and injunction, and that on adjudication title to the

bankrupt's property became vested in the trustee: Muller v. Nugent, 184 U. S. 1, 14. The asserted right of property arose out of a contract under which the insurance company had rights as well as the insured......The company, having in good faith performed the contract according to its terms, without the notice that the contract called for as a condition of changing the terms, cannot be called upon to make the further payment demanded by the trustee." If, as appears in that case, the trustee got nothing when death occurred and payment was made after adjudication, with stronger reason, the trustee here had no valid claim where the loss occurred before petition and payment was made before adjudication. In the Zotti Case, heretofore cited (186 Fed. 840), it was said "Whatever else the remark [in Mueller v. Nugent that the filing of the petition is a caveat to all the world and in effect an attachment and injunction] may mean, it cannot mean, in contradiction of the express provision of the act, that the title of the bankrupt shall vest in the trustee as of the time of filing the petition......We think this language was never intended to be applied to a bank which has honestly paid checks of a depositor without notice that any petition has been filed against him and who may never be adjudicated a bankrupt at all......It was because the Act of 1867 threw doubt upon the validity of honest transactions between the filing of the petition and adjudication that the words 'as of the date he was adjudicated a bankrupt' were inserted in the Act of 1898."

In Johnson v. Collier, 222 U. S. 538 (1912), the bankrupt was allowed to institute an action between the time of the filing of the petition and adjudication. The defendant there attempted to defend against the suit on the ground that a petition had been filed, but the court said the bankrupt was not divested of his property by filing a petition in bankruptcy, that he was still the owner holding in trust pending the appointment and

qualification of a trustee, whose title then relates back to the date of the adjudication.

A proper conclusion we think to be drawn from the cases of Everett v. Judson, 228 U. S. 473, and Burlingham v. Crouse, 228 U. S. 459, is that the trustee's title goes back to the adjudication, but he takes title to property *as it was* at the time of the filing of the petition. If there was nothing in existence at the time of adjudication to which he could take title, it is immaterial in what condition any property might have been at the time of the filing of the petition. To come within the language of Everett v. Judson, where Mr. Justice DAY said, at page 478, "While it is true that section 70a provides that the trustee, upon his appointment and qualification, becomes vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, there are other provisions of the statute, which, we think, evidence the intention to vest in the trustee the title to such property *as it was at the time of the filing of the petition*," there must be property in existence at the time of adjudication so that the trustee could then take title. In the case now before us, there was no property in existence at the time of the adjudication, because the right of action against the insurance company had ceased prior to that time. It is immaterial, therefore, whether there was a right of action at the time of filing the petition.

Our conclusion is that the trustee cannot compel the defendant to again pay the money which it in entire good faith parted with to its insured without knowledge that a petition in bankruptcy had been filed against him.

Judgment affirmed.