STARR *v.* DETROIT BANK.

1. BANKRUPTCY—CORPORATIONS—DISSOLUTION.

Involuntary proceedings in bankruptcy against a corporation supersede previously commenced voluntary proceeding for dissolution of the corporation.

2. SAME—VOIDABLE PREFERENCES—REASONABLE CAUSE TO BELIEVE DEBTOR INSOLVENT.

In action by trustee in bankruptcy against bank to recover sums paid defendant by corporation while insolvent and within four months' period during which a voidable preference may be claimed under the bankruptcy act, the decisive question is whether or not defendant bank had *reasonable cause to believe* corporation was insolvent when the payments were made on note, not whether corporation was insolvent when the payments were made nor whether bank used good judgment in making the loan (Bankruptcy Act, §§ 60a, 60b).

3. SAME—REASONABLE CAUSE TO BELIEVE DEBTOR INSOLVENT—SUSPICION.

A mere suspicion of insolvency or cause to suspect insolvency of debtor would not be sufficient to charge creditor with *reasonable cause to believe* debtor to be insolvent as that term is used in the bankruptcy act in provisions relating to voidable preferences (Bankruptcy Act, § 60b).

4. SAME—VOIDABLE PREFERENCES—BURDEN OF PROOF.

A trustee in bankruptcy seeking to set aside payments made within four months' period during which voidable preferences may be claimed under the bankruptcy act has the burden of proof of showing the creditor receiving payments had reasonable cause to believe debtor insolvent and that the payment was preferential (Bankruptcy Act, §§ 60a, 60b).

5. SAME—VOIDABLE PREFERENCES—BURDEN OF PROOF.

A preferential payment made within the period when such transfers may be set aside under the bankruptcy act must, in order to be set aside, have been made to a creditor shown to have a knowledge of some fact or facts calculated to produce in the mind of an ordinarily intelligent man a reasonable cause to believe debtor insolvent, the presence or absence of such reasonable cause to believe depending upon the facts of each case (Bankruptcy Act, §§ 60a, 60b).

6. SAME—VOIDABLE PREFERENCE—BANKS—WHOLESALE JEWELERS—EVIDENCE OF INSOLVENCY.

>  Bank which had loaned corporation, doing wholesale jewelry business and which had always promptly paid previous loans, carried a substantial balance in its checking account, and never had its account attached or garnisheed and whose last financial statement in May had shown on its face that corporation was solvent, the sum of $6,000 on a 90-day note on July 28th with the understanding it would be renewed when due *held,* not shown to have had a reasonable cause to believe debtor was insolvent when it made payment of $1,000 on November 26th upon the second renewal, when there were no additional circumstances to indicate company was insolvent, nor when payment of $3,000 was made on December 27th even though on latter date account was insufficient at the opening of business on that date where there was a substantial surplus beyond that payment at the close of business due to deposits in line with other deposits made in the regular course of business (Bankruptcy Act, §§ 60a, 60b).

7. SAME—VOIDABLE PREFERENCE—WHOLESALE JEWELERS—BANKS—COLLUSION TO AVOID GARNISHMENT—EVIDENCE.

>  Corporate wholesale jeweler's final payment of $2,000 on $6,000 loan, made on January 25th after peak of seasonal business had passed and which nearly exhausted debtor's checking account after deposit of $144.71 had been made after service upon bank of garnishment summons on a claimed debt of $4,000 on day before final renewal note was due, *held,* to constitute a voidable preference, where there appears to have been collusion between bank and debtor in order to avoid garnishment; collusion being provable by circumstances which, if separately considered, might be inconclusive, but where jointly considered are sufficient, especially when corroborated by moral coincidences (Bankruptcy Act, §§ 60a, 60b).

8. SAME—VOIDABLE PREFERENCE—FRAUD.

>  Fraud is not required to establish a voidable preference under the bankruptcy act (Bankruptcy Act, §§ 60a, 60b).

9. BANKS AND BANKING—SETOFF—CHECKING ACCOUNTS—MATURED LOANS.

>  A bank may not exercise the right of setoff of a loan to a customer against latter's checking account except as to loans which have matured.

Appeal from Wayne; Chenot (James E.), J. Submitted October 10, 1941. (Docket No. 38, Calendar No. 41,536.) Decided December 2, 1941.

Assumpsit by William G. Starr, trustee of W. C. Noack's Sons, Inc., bankrupt, against Detroit Bank to recover claimed voidable preferences. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Friedman, Meyers & Keys (Joseph H. Jackier,* of counsel), for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

BOYLES, J. On July 28, 1937, W. C. Noack's Sons, Inc., a wholesale jewelry concern, borrowed $6,000 from the defendant bank on a 90-day note, due October 26, 1937, indorsed by one John J. Schantz. When the note became due no payment was made on principal and a renewal note was given for 30 days, with the same indorsement. On November 26th, when this note became due, the company paid $1,000 on principal by check on a commercial account in the bank and gave the bank a renewal note for the balance, $5,000, due in 30 days, with the same indorsement. On December 27, 1937, when this note became due the company paid the bank $3,000 on principal by the same method and gave the bank a renewal note for $2,000, due in 30 days (January 26, 1938), with the same indorsement. On January 25, 1938, the day before this note became due, it was paid by the company under the following circumstances:

"In the morning on said date the bank received a check for $2,000, and when the bank went to debit the account, the bank discovered that the balance in the account was $1,855.39. The bank called W. C. Noack's Sons, Inc., and they informed the bank that their bookkeeper had made a mechanical error in

computing their balances, but that a deposit that they were making that day would soon be taken to the bank. On said date, between the time when the bank called Noack's and before the deposit was made, a writ of garnishment was served on said bank against the account of said W. C. Noack's Sons, Inc., at which time said bank applied the then existing balance of $1,855.39 in said account against the said note for $2,000; that later in the day Noack's deposited the sum of $144.71, and the said defendant applied the sum of $144.61 therefrom to the balance due on the said note of $2,000, paying said note in full. The defendant thereupon returned to said W. C. Noack's Sons, Inc., its check in the amount of $2,000, together with the said $2,000 not showing payment in full.''

On January 31, 1938, the company filed a voluntary petition in the Wayne circuit court for dissolution of the corporation. February 23, 1938, an involuntary petition in bankruptcy was filed against W. C. Noack's Sons, Inc., in the United States District Court for the Eastern District of Michigan, Southern Division, which proceeding superseded the action filed by the company for dissolution. On March 11, 1938, the company was adjudged bankrupt, and this matter is still pending. William G. Starr, plaintiff herein, was duly appointed trustee in bankruptcy. Both the plaintiff company and the defendant bank are Michigan corporations.

On July 7, 1939, William G. Starr, as trustee of W. C. Noack's Sons, Inc., a bankrupt, started the instant suit against the defendant bank, claiming that when W. C. Noack's Sons, Inc., made said transfers of $1,000 on November 26th, $3,000 on December 27th, and $2,000 on January 25th, the company was insolvent; that these transfers were made within the four months' period during which a voidable preference may be claimed under the bankruptcy act; and that when the transfers were made the

bank had reasonable cause to believe the company to be insolvent. The trustee seeks to recover these sums for the benefit of the company's creditors in bankruptcy.

The case was tried by the court without a jury. The court, after hearing considerable testimony, found that the plaintiff, trustee, had failed to prove, by a preponderance of the evidence, that the defendant bank had reasonable cause to believe that the company was insolvent at any time when any money was received by it and entered judgment of no cause of action.

The defendant and appellee does not question plaintiff's proof relating to insolvency of W. C. Noack's Sons, Inc., in November, December and January, when the transfers were made. The primary issue for our consideration is whether the defendant bank had reasonable cause to believe, at the time the transfers were made, that the company was insolvent. The question divides itself into three issues, namely: (1) On November 26, 1937, did the bank have reasonable cause to believe that the company was insolvent whereby the transfer of $1,000 on that day would be a voidable preference? (2) On December 27, 1937, did the bank have such reasonable cause to believe the company was insolvent whereby the transfer of $3,000 on that day would be a voidable preference? (3) On January 25, 1938, did the bank have such reasonable cause to believe the company was insolvent whereby the transfer of $2,000 on that day would be a voidable preference?

The pertinent provisions of sections 60a and 60b of the bankruptcy act, at the time of decision, are as follows:

"SEC. 60a. A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an

antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, * * * the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. * * *

"SEC. 60b. Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent." 11 USCA, § 96, as amended June 22, 1938, chap. 575, § 1, 52 Stat. at L. 869.

No claim is made that the amendment of 1938 has any bearing on the issues in the instant case.

Many of the material facts and circumstances apply equally to all three transactions. There were, however, some additional circumstances surrounding the transaction in December and other additional circumstances surrounding the transaction in January which require separate consideration for each. It may be conceded that when the November transfer was received the bank might not have had reasonable cause to believe the company insolvent, while additional circumstances might change the result as to either or both of the December and January transactions.

Among other assignments of error, plaintiff asserts that the judgment of the trial court is against the preponderance of the evidence. This brings the question before us for review. *Jones* v. *Eastern Michigan Motorbuses*, 287 Mich. 619, 643; *City of Bessemer* v. *Korpi*, 282 Mich. 190.

The issue before us is not whether the company actually was insolvent when the transfers were made; neither is it whether the bank used good judgment in making the loan. The question is squarely whether the defendant bank had, at the time when a

transfer was made, *reasonable cause to believe* that the company was insolvent. A mere suspicion of insolvency or cause to suspect insolvency would not be sufficient to charge the bank with reasonable cause to *believe* the debtor to be insolvent.

In the leading case decided by the United States supreme court it was held:

"It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it,—and yet such belief as the act requires may be wanting. Obtaining additional security or receiving payment of a debt, under such circumstances is not prohibited by the law." *Grant v. National Bank,* 97 U. S. 80 (24 L. Ed. 971).

See, also, *Cusick* v. *Second National Bank,* 73 App. D. C. 16 (115 Fed. [2d] 150), 153; *McDougal* v. *Central Union Conference Assn.* (C. C. A.), 110 Fed. (2d) 939.

The burden of proof was on plaintiff. 4 Remington on Bankruptcy (4th Ed.), § 1829, and cases cited.

In *Boone* v. *Spagnuolo,* 276 Mich. 410, at page 415, Mr. Justice NORTH, writing for this court, quoted with approval the following:

" 'Recovery must be based upon facts to support the assertion of knowledge on the part of the credi-

tor or reasonable cause to believe that insolvency existed at the particular time of the transaction. Indeed, there must be facts sufficient to apprise an ordinarily cautious person that inquiry would inform him of the insolvent condition of the bankrupt, and that the result of the transfer within four months before filing the petition would inevitably result in a preference under section 60 of the bankruptcy act.' *O'Grady* v. *Chautauqua Builders' Supply, Inc.*, 33 Fed. (2d) 957. (Citing numerous cases.)

" 'Apprehension or suspicion on the part of a creditor is not the equivalent of good cause for it (the creditor) to believe the debtor is insolvent at the time the payments are made.' (Citing several cases, including *Stucky* v. *Masonic Savings Bank*, 108 U. S. 74 [2 Sup. Ct. 219, 27 L. Ed. 640] ; *Soper* v. *International Harvester Co. of America*, 194 Iowa, 868 [190 N. W. 386].) ''

The construction to be given "reasonable cause to believe," as used in section 60b of the bankruptcy act, has been the subject of many decisions and considerable difference of opinion. The variance is well indicated in the briefs of counsel, where the language quoted from previous decisions may well be considered to support different viewpoints. However, the question has been settled by this court in *Colvin* v. *Horning*, 277 Mich. 387, 392, 393, from which we quote at length, as follows:

"The perplexing and difficult question arises out of the application of section 60 of the bankruptcy act (11 USCA, § 96), rendering transfers by an insolvent debtor within four months before the filing of the petition in bankruptcy voidable by the trustee if the 'transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference.'

"In *Grant* v. *National Bank,* 97 U. S. 80 (24 L. Ed. 971), the court distinguished between 'cause to believe' and 'cause to suspect' that a person is insolvent and emphasized that the former is the statutory test, concluding:

" 'Hence the act, very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man.'

"Necessarily, the presence or absence of the reasonable cause to believe depends upon the facts of the case. It is so recognized by the courts and no fixed rules thereon have been attempted, although courts have declared certain conditions as having much force but always in connection with other facts. Consequently, discussion of illustrative cases is not particularly helpful.

"It seems, however, that a rule has grown up in the Federal courts to the effect that:

" 'Notice of facts, which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop.' *Farmers' State Bank* v. *Freeman,* 161 C. C. A. 505 (249 Fed. 579).

"Reference to the large number of illustrative cases which have been cited by counsel indicates that this rule has been applied with varying degrees of latitude, even to the extent of practically nullifying the decision in the *Grant Case* by holding suspicious circumstances sufficient to put the creditor on inquiry and to bind him by the facts which inquiry would have disclosed. In the *Grant Case* the court construed the act with due regard to the practical necessities of business and the rights and difficulties of creditors. The law has always favored diligence

in creditors and ought not to require them to imperil their claims by an inquisition of the debtor which would be resented by him. The rule of inquiry applies only when the facts known to the creditor or apparent to a reasonably prudent and intelligent person are sufficient to induce a reasonable belief in insolvency. In such case the creditor is not entitled to ignore known or apparent facts and accord them an innocent construction unless he inquires and finds they are innocent or is unable to find that they are evil. But in all cases the primary question is the facts known or apparent to the creditor.''

In the case at bar the original loan of $6,000 was made nearly seven months before the petition in bankruptcy was filed, and three months before the preference period began. The company had at various times been carrying a substantial balance in a checking account in the bank for a number of years. The history of prompt payment of former loans was satisfactory. The borrower's integrity had been established. There had never been an attachment or garnishment of the company's account in the bank. It is true that previous financial statements and a commercial agency report, known to the bank, indicated a financial condition of the company described as ''not strong.'' No financial statement was asked for or received by the bank later than May, 1937. The financial statements on their face showed that the company was solvent, although plaintiff claims that a reasonable analysis of the statements would have convinced a reasonable banker the company was insolvent.

The defendant bank claims to have relied upon the fact that the company's business as a wholesale jewelry concern was seasonable in character. The financial statements indicated that the company was in a low current financial position in midsummer.

The bank had reason to believe this would be remedied during the peak business of the company approaching the holiday season. The bank also had information that the current low position was in process of being remedied by the subordination of certain items of indebtedness and by additional capital. The fact that these expectations were not later realized by the company does not establish that the bank at any time earlier, at least, than January, 1938, had any reasonable cause to believe that such would be the outcome.

When the loan was made on July 28th it was understood that renewal would be necessary when it became due. When it was renewed, October 27th, and again when the $1,000 was paid and the second renewal granted, November 26th, there were no additional facts or circumstances which would indicate any more reason to believe the company was insolvent. When the company made the $3,000 payment on December 27th there was only one additional circumstance of any importance. On December 27th the debtor gave the bank a check on a commercial account in the bank for $3,000. At the opening of business on that day the company's balance in its checking account was only $2,334.52. However, during banking hours on that day the company deposited $1,288.71. This left a balance of $623.23 in excess of the sum necessary to clear the check at the close of the banking day.

The result reached by the trial court indicates that this additional circumstance was not sufficient to establish that the bank had reasonable cause to believe the company was insolvent. We concur in that view. The company had been paying its debts, making satisfactory additions to its checking account, and had been drawing checks to pay accounts

of considerable extent. Plaintiff claims that the additional deposit on December 27th was for the purpose of building up an account to make the check good. The deposit was in line with other deposits made in the regular course of business. Had it been approximately the amount necessary to make the check good we might give more credit to this claim of plaintiff.

We concur in the conclusion reached by the trial court that plaintiff failed to show by a preponderance of the evidence that the bank had reasonable cause to believe the company was insolvent when the November and December transfers were received by it. These transfers did not constitute a voidable preference.

The transfer of $2,000 on January 25th was made under different circumstances. The peak period in the company's wholesale jewelry business had been passed. Bank deposits were fewer and collections could no longer be expected to continue at the high point reached during the closing months of the year. On January 25th, the day before the last note fell due, the company gave the bank a check on its commercial account for $2,000. The company's checking account lacked $144.61 of the sum necessary to cover the check. This was called to the company's attention after the bank opened on that day. Before anything further was done the bank was served with garnishment process against the company's checking account on a claimed debt of $4,000. Subsequently, on the same day, the company brought to the bank $144.71, to make up the difference between its balance and the $2,000. Later in the day the bank applied the deposit, including the additional sum, to cancel the note. The bank returned the $2,000 check and the cancelled note to the company. The apparent purpose in returning the check was so

that the bank might claim the note had been offset rather than paid by check in order to defeat the garnishment or to avoid a preference.

Defendant admits that neither the original loan nor any of the renewals would have been made without the indorsement of Mr. Schantz, whose financial circumstances were investigated and found to be satisfactory.

The haste in completing payment before the note was due has not been satisfactorily explained. The conclusion is inescapable that there must have been some collusion between the company and the bank to avoid the effect of the garnishment or, perhaps, a preference. In fact, the bank admitted there was some ''cooperation'' in that respect.

''Positive proof of collusion between debtor and creditor, by which one may be preferred, is not generally to be expected, and for that reason, among others, the law allows a resort to circumstances as the means of ascertaining the truth, and the rule of evidence is well settled that circumstances inconclusive if separately considered may by their joint operation, especially when corroborated by moral coincidences, be sufficient. Signs of insolvency were too many and too marked not to warn the president of this bank that he was getting a prohibited advantage over other creditors.'' *In re C. J. McDonald & Sons*, 178 Fed. 487, 492, aff'd 106 C. C. A. 585 (184 Fed. 986, 25 Am. B. R. 948).

The January payment was not made by check against the company's commercial account, as had been done in the November and December payments. The check tendered on January 25th was returned. The bank claims to have exercised the right of offset, using the company's funds then on deposit and the additional $144.61 as an offset against the company's note. The infirmity in this assertion lies in

the fact that the attempted offset was made before the note became due. Only in this way could the bank expect to avoid a claim of preference if the court should find the bank had reasonable cause to believe the company was insolvent at that time. Neither this attempt nor the effort to escape the effect of the garnishment can receive the favorable consideration of the court. Subterfuge is not favored in the law. We do not intend to imply there was fraud in this connection—fraud is not required to establish a voidable preference. *Canright* v. *General Finance Corp.*, 35 Fed. Supp. 841 (45 American B. R. [N. S.] 288).

However, the transaction on January 25th cannot be considered as the exercise of the right of offset by the bank. The note was not yet due. In *Fifth National Bank of City of New York* v. *Lyttle*, 250 Fed. 361, 366 (39 Am. B. R. 690), certiorari denied, 247 U. S. 506 (38 Sup. Ct. 427, 62 L. Ed. 1240), the court held:

"The bank has called our attention to the decisions of the supreme court recognizing the right of a bank to setoff a balance due from it against notes of the bankrupt held by it. But in *New York County National Bank* v. *Massey*, 192 U. S. 138 (24 Sup. Ct. 199, 48 L. Ed. 380), the right of set-off was exercised by the bank after the petition in bankruptcy was filed. And in *Studley* v. *Boylston Bank*, 229 U. S. 523 (33 Sup. Ct. 806, 57 L. Ed. 1313), the bank, a few months prior to the adjudication in bankruptcy had charged against the depositor's account certain notes as they had matured, which had been made by the depositor and held by the bank.

\* \* \*

"These cases differ from the case at bar, and it is now argued that the right of set-off existed at a date when the notes which the bank held had not matured and prior to the adjudication of bankruptcy.

We are not aware that any such application of the doctrine is supported by any Supreme Court decision. We think it is not the law.''

In *Jordan* v. *National Shoe & Leather Bank*, 74 N. Y. 467 (30 Am. Rep. 319), the court held:

''The defendant further contends, that it had and continues to have, a banker's lien on the balance of deposit sued for. There is spoken of in the books, what is termed a banker's lien, but it is not a right to retain the balance of a customer's deposit, to pay or apply upon an indebtedness of his to the bank, not yet matured.''

The rule is also stated as follows in 4 Remington on Bankruptcy (4th Ed.), p. 587:

''But this right of offset is only exercisable as to matured claims. Neither a 'banker's lien,' nor a bank's right of offset of claims against deposit, in the absence of express contract covering the case, is enforceable until the claims are matured; and, until then, the deposit may be checked out despite the bank's unwillingness.''

See, also, *Kull* v. *Thompson*, 38 Mich. 685; *Bradley* v. *Thompson Smith's Sons*, 98 Mich. 449 (23 L. R. A. 305, 39 Am. St. Rep. 565).

We conclude that the bank does not have the right to retain the $2,000 received by it January 25th, either on the theory of offset or by lack of reasonable cause to believe the company was insolvent. The trustee is entitled to recover this payment from the defendant.

Judgment is reversed and the case remanded for entry of judgment for plaintiff in the sum of $2,000, with costs.

SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred.