WEIDMAN LUMBER CO. *v.* SPEAR.

BANKRUPTCY—SETTING ASIDE PREFERENTIAL PAYMENT OF DEBT.
    In action of assumpsit by reorganized corporation, judgment for defendants who in payment of debt for oats and bran had received lumber while plaintiff was bankrupt is affirmed where it is not shown payment of debt constituted a voidable preference and bankruptcy proceedings were terminated without the payment having been set aside.

Appeal from Marquette; Bell (Frank A.), J. Submitted January 9, 1945. (Docket No. 10, Calendar No. 42,655.) Decided April 9, 1945.

Assumpsit by Weidman Lumber Company, a Michigan corporation, against F. B. Spear and others, doing business as F. B. Spear & Sons. Judgment for defendants. Plaintiff appeals. Affirmed.

*Ivan D. Wright,* for plaintiff.

*George C. Quinnell,* for defendants.

REID, J. ,Plaintiff appeals from a judgment for defendants in an action tried before the circuit judge without a jury. The facts are set forth in a stipulation of facts with exhibits attached thereto. The suit is for lumber delivered after a petition in involuntary bankruptcy had been filed and before the appointment of a trustee in bankruptcy. Plaintiff claims that the sale of the lumber was made to defendants by George L. Connors as receiver, after. qualifying as such, having been appointed by order of the circuit court for Ontonagon county; that the receiver could not sell except for cash, had no right to sell the lumber to pay a pre-existing debt owed to defendants; that Abbott M. Fox was appointed by the Federal court temporary trustee in bankruptcy on April 22, 1938, and qualified as such, April 23, 1938; that the plan of. reorganization tendered in the answer of Weidman Lumber Company in the bankruptcy matter on April 15, 1938, claiming the benefit of section 77 B*. of the bankruptcy laws, was approved by the Federal court on April 22, 1938; that after the reorganization had been arranged for, the Federal court on March·23, 1940, constituted plaintiff successor to Fox, temporary trustee in bankruptcy; that thereupon plaintiff became vested with all the power, right and authority of the temporary trustee to bring action against defendants on the theory that as upon a quasi-contractual obligation defendants owed plaintiff for the lumber received by them without being entitled to à set-off for the pre-existing debt; that such suit does not involve a preference.

Plaintiff company in its brief further recites its answers to questions propounded by the trial judge not answered in the written stipulation of facts: first, that no claim was filed by defendants in the

---

* See 11 USCA, § 207.—REPORTER.

bankruptcy case; and second, the statement of the president of plaintiff company, that plaintiff has sufficient assets to pay the creditors of plaintiff a dividend of 20 per cent.; that the chances of creditors receiving 40 per cent. are very slight and over 40 per cent. nonexistent.

These statements as to creditors of plaintiff company must be taken to refer to conditions as they stood before the reorganization, especially in view of the following statement also recited by plaintiff as made to the trial judge:

"As the court has undoubtedly gathered from the plan of reorganization of Weidman Lumber Company submitted in this matter, the various unsecured creditors of that company accepted class A common stock in the reorganized company for the full amount of their claims, such stock being issued on the basis of $10 a share. Under the plan of reorganization the stockholders of the original Weidman Lumber Company were given 2 years within which to buy back the company by paying the unsecured creditors 50 cents on the dollar. This limitation has long since expired, and the stockholders of the original Weidman Lumber Company have not made any attempt to redeem their company. As it now stands the unsecured creditors of the original Weidman Lumber Company will have to be paid, if at all, out of the value of the stock which they hold in the reorganized company."

Defendants do not deny these statements recited in plaintiff's brief as made to the trial judge. We may take such statements as true as far as concerns the claims and theories of the party making them, which is the plaintiff itself. Some such plan to bring the corporation out of a bankrupt condition would be a prerequisite of the Federal court's order terminating the temporary trusteeship.

It is considered, therefore, as far as plaintiff's theories and claims in this case are concerned, that after March 23, 1940, the date of the order of the Federal court terminating the trusteeship in bankruptcy, the plaintiff was no longer bankrupt but was entirely free from debt unless the debt be that due defendants as for an unpaid bill. After that date and on March 3, 1941, the instant suit was begun. The temporary receiver, Connors, appointed by the State court, never took any action to rescind or avoid this sale nor to recover back the lumber as sold by him without authority or right. The suit on that claim by the temporary trustee in bankruptcy was dismissed.

Plaintiff claims its right of action is based on a quasi-contract and presupposes a duty of defendants to pay Connors, receiver, for the lumber it claims the receiver sold them without right to pay the pre-existent debt, as a claim based on law and justice and not founded on any express or implied promise or agreement of defendants.

The final account of Connors, receiver, was allowed in the Ontonagon circuit court, August 8, 1938, and supplemental accounts, October 8, 1938. There is nothing in the record to show that the authority of Connors, as receiver, was transferred to plaintiff. Apparently the receivership in the State court was simply terminated because of the paramount authority of the Federal court in bankruptcy, in the proceeding then still pending therein.

Defendants admit that the sale of the lumber amounted to a preference, but claim the preference nonvoidable. Defendants further claim that the temporary trustee had the sole right to sue to void the preference. The temporary trustee in bankruptcy began suit against defendants alleging the preference voidable, but permitted the suit to be

dismissed with costs taxed against him, closed his trusteeship and turned the assets back to the reconstituted company without further action against defendants.

The Weidman Lumber Company had been in business for upwards of 10 years, and was generally reputed to be in good financial condition. Defendants had had business dealings with the company over a long period and had experienced no difficulty as to payments due defendants. In September and December, 1937, the, Weidman Lumber Company bought oats and bran from defendants to the value of $1,040.20. Plaintiff's office was at Trout Creek and its mills were at Trout Creek and Ewen. Defendants' place of business was at Marquette. At the time of the purchase of the oats and bran the Weidman Lumber Company was actually insolvent, which fact was unknown to defendants then and until after defendants had obtained the lumber by the sale which is attacked by plaintiff. On January 7, 1938, J. S. Weidman, Jr., president of the Weidman Lumber Company, wrote defendants that he had been out of the office the last two days when defendants had been trying to reach him, which he supposed was about the account, and said lumber hadn't been moving recently but he would send defendants a ·check just as soon as possible. On March 1, 1938, defendants wrote Weidman Lumber Company, attention of Mr. Connors, as to the offer of Mr. Weidman that defendants take some hemlock lumber but said defendants' yard was deep with snow and trusted they would take some of the Weidman Lumber Company's material in the spring. In reply on March 8, 1938, Mr. Connors wrote:

"In reply to your letter of March 1, we are pleased to observe that you are making an effort to use some of our hemlock later on in the spring.

"We also have some #1, #2 and #3 Com pine. Could you use a couple truckloads of pine now to apply on our account?

"We would like to reduce our account with you and as we are not getting much income from lumber shipments, thought perhaps you could use some pine or other items we have available for shipment."

Defendants replied by letter,

"March 22, 1938

WEIDMAN LUMBER COMPANY
Trout Creek, Michigan
Attention of Mr. George L. Connors
*Gentlemen:*
"Mr. Philip Spear, Jr., has been away from the office since the first of March which will account for his not replying to your letter of March 8th.

"On his return, this letter will receive his attention.

Yours very truly,
F. B. SPEAR & SONS"

On April 15, 1938, defendants made a purchase order for sufficient lumber to pay their account within a few cents, adding at the bottom, "Per letter of March 8 and telephone conversation of to-day."

On April 1, 1938, the original Weidman Lumber Company filed a petition in the circuit court for Ontonagon county praying for a voluntary dissolution of that corporation and the appointment of George L. Connors as temporary receiver, and Connors was appointed as such temporary receiver.

On April 2, 1938, a petition in involuntary bankruptcy was filed against the corporation by some of its creditors. On April 15, 1938, the answer of the Weidman Lumber Company in the bankruptcy proceedings claimed the benefit of reorganization under section 77 B of the bankruptcy laws. On

April 22, 1938, the Federal district court approved of the answer of plaintiff and Abbott M. Fox was appointed temporary trustee. The Chandler Act amending the Federal bankruptcy laws became effective June 22, 1938. On February 15, 1939, temporary trustee Fox began suit against defendants claiming the purchase of lumber by defendants to the approximate amount of defendants' account was a voidable preference, which suit was dismissed August, 1940. In the meantime the Federal court by its decree dated March 23, 1940, constituted plaintiff, as reorganized, the successor to the temporary trustee, Abbott M. Fox.

The following from the findings of the trial judge is quoted with approval:

"The filing of the petition in the United States court, in bankruptcy, was a caveat to all the world. It was in fact an attachment and injunction. Thereafter all the property rights of the debtor were *ipso facto* in abeyance until the final adjudication. Preferential transactions were voidable by the trustee. *Stone* v. *Superior Fire Insurance Co.*, 278 Pa. 400 (123 Atl. 333, 31 A. L. R. 248, 250).

"Date of bankruptcy means the date when the petition is filed. 11 USCA, § 1.

"The estate being in custody of the law from the date of filing the petition, title of the trustee relates back to, and is determined as of, that date. 8 C. J. S. pp. 669, 670.

"Jurisdiction of the bankruptcy court in reorganization proceedings supersedes that of the State court with respect to the debtor and his property. 8 C. J. S. p. 1772.

"A preference is a transfer * * * of any of the property of a debtor * * * to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while

insolvent and within four months before the filing by or against him of the petition in bankruptcy * * * the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. * * * And if such transfer is not perfected prior to the filing of the petition in bankruptcy * * * it shall be deemed to have been made immediately before bankruptcy.

"Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. 11 USCA, § 96 (a, b).

"There would seem to be no doubt that under the * * * recited facts and provisions of law that this delivery of lumber to the defendants was a preference. But there are preferences which are voidable and preferences which are not voidable. If the creditor has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent, the transfer is voidable. Otherwise it is not. *West Philadelphia Bank* v. *Dickson,* 95 U. S. 180 (24 L. Ed. 407) ; *Traders' Bank* v. *Campbell,* 14 Wall. (81 U. S.) 87 (20 L. Ed. 832).

"While, as before stated, it is agreed that at the time the credit was extended and the lumber was delivered to the defendants in payment of their account the original company was insolvent, there is nothing to show that the defendants had, at that time, any reasonable cause to believe that it was insolvent. Plaintiff's counsel urges that the letter and billing of April 19th and 22d, respectively, were enough to indicate to the defendants that all was not well with the company.

"Courts should construe the requirements of the act with due regard to the practical necessities of business and the rights and difficulties of creditors.

*Starr* v. *Detroit Bank,* 299 Mich. 681; *Colvin* v. *Horning,* 277 Mich. 387.

"What constitutes 'reasonable cause to believe' depends on the facts and circumstances of each case. Actual knowledge or belief is not necessary; it is sufficient if there is knowledge or notice of facts or circumstances sufficient to induce belief. 8 C. J. S. p. 714.

"In ascertaining the question of reasonable cause for belief the relation of the parties, their intimacy or lack of it, the usual or unusual nature of the transfer, the opportunity of the creditor for knowledge, the participation of the creditor, if any, in the business of the debtor may be considered. *Goetz* v. *Zeif,* 181 Wis. 628 (195 N. W. 874).    *    *    *

"The letter and statements referred to were forwarded by mail, handled by clerks in the offices of the defendants as routine mail, they were silent as regards bankruptcy except the bare signatures which were given no prominent positions, they were not brought to the attention of any of the defendants as it appears by the stipulation that none of the defendants knew anything about the bankruptcy proceedings until after the lumber was ordered, the payment of the account with lumber was in accord with the earlier correspondence and telephone conversations, there had been negotiations to that end for at least three months, the representative of the defendants had recently been in the office of the company and had not been told of the bankruptcy proceedings which were then pending, defendants' bills against the company had always been paid in the past, and the reputation of the company was good. It must be held as a matter of fact and law that when the defendants accepted the lumber in payment of their account they did not have reasonable cause to believe and did not know that the company was insolvent, and, therefore, the acceptance of this payment did not amount to a voidable preference.

"The foregoing discussion is based on the assumption that the trustee could and did turn over to the plaintiff at the end of the reorganization proceedings an unliquidated claim against the defendants which depended for its validity upon the question of whether or not it was a voidable preference under bankruptcy law in a proceedings in bankruptcy then at the end of that proceeding, together with the right to litigate it as his assignee of his entire estate in bankruptcy. * * * Preferences are creatures of the bankruptcy law, created for the equitable purposes of that law; they are intended to protect both debtors and creditors. * * * The bankruptcy law authorizes the trustee, and no one else, to attack those he believes to be voidable. * * * Here the trustee recognized his right and commenced suit to recover a claimed voidable preference payment by the debtor, but he failed to pursue it and abandoned his suit. He winds up his estate with the approval of the bankruptcy court and goes out of office and his assets go by a general decree of that court to the reorganized company. These assets cannot include this claim because it has not been established that the delivery of the lumber was a voidable preference. The right to attack it died with the bankruptcy proceedings.

"A trustee may by his conduct waive or lose his right to attack a transfer on the ground that it is a voidable preference. 8 C. J. S. p. 798.

"It must be held that the trustee waived and abandoned his right to attack the delivery of the lumber as a voidable preference, and that the plaintiff did not acquire from him, or through the bankruptcy law, any right to do so."

It is further to be noted that, as receiver, Connors had no right to grant a preference and that the purchase order signed by defendants dated April 15, 1938, recites, "per letter of March 8 (by Connors) and telephone conversation of today." That tele-

phone conversation was conducted between defendants and Mrs. Gingerich, who was in charge of the lumber company's office at Trout Creek. Defendants did not know until after they received the lumber anything about the bankruptcy proceedings nor about the fact of insolvency. The stipulation of facts recited,

"F. B. Spear & Sons had no knowledge or notice of such insolvent condition other than that which might be implied from the facts herein stipulated."

This would negative any possibility that Mrs. Gingerich in that conversation as to purchase said anything about the sale being made by the receiver.

We conclude that on April 15th the entire matter of the purchase was transacted as a sale to defendants by Weidman Lumber Company, and not by Connors as receiver. The transaction was made in good faith by defendants and to pay their account against the lumber company's debt. Such preference was not voidable. If it had been voidable, that fact should have been adjudicated in a suit in which the trustee was a party. *Lovell* v. *Latham & Company*, 211 Fed. 374; *Glenny* v. *Langdon*, 98 U. S. 20 (25 L. Ed. 43). The corporation may not void a preference received in good faith and made by the corporation itself to pay a valid debt. Plaintiff claims the sale was made by Connors as the receiver and that defendants owed the plaintiff for the lumber received. But plaintiff has not denied the validity of its debt to defendants.

The plaintiff corporation is after all the same legal entity that it was when it bought flour and bran for which it has not paid except by the lumber in question. Its creditors bought the stock of plaintiff company which the former stockholders must have

surrendered to become treasury stock for that purpose. Therefore the former creditors (other than defendants who did not join therein) were fully paid, no longer are creditors and cannot now be accorded any of the rights or privileges of creditors.

There is no showing that the Federal court by any order cancelled the debt owed by Weidman Lumber Company to defendants F. B. Spear & Sons. This is clear because no permanent trusteeship was ever established in the Federal court. Neither did the State court by any order cancel that debt. Apparently the proceedings in the Federal court were closed on the assumption that the purchase by defendants of the lumber in question had cancelled their account against the Weidman Lumber Company.

The judgment appealed from is affirmed, with costs to defendants.

BUSHNELL and BOYLES, JJ., concurred with REID, J.

STARR, C. J., and NORTH, WIEST, BUTZEL, and SHARPE, JJ., concurred in the result.